457 So.2d 60 (1984)
Mrs. Harriet Thomas PREJEAN wife of/and Early Prejean
v.
The GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., d/b/a A & P Food Stores.
No. CA-1125.
Court of Appeal of Louisiana, Fourth Circuit.
August 6, 1984.
Dissenting Opinion October 23, 1984.
Rehearings Denied October 29, 1984.
Writ Denied December 14, 1984.
*61 Lambert J. Hassinger, New Orleans, for plaintiffs-appellants Mrs. Harriet Thomas Prejean.
Melanie Shaw, Henican, James & Cleveland, New Orleans, for defendant-appellee The Great Atlantic & Pacific Tea Co., Inc., d/b/a A & P Food Stores.
Before REDMANN, C.J., and GARRISON, BARRY, KLEES and WILLIAMS, JJ.
BARRY, Judge.
Plaintiff appeals the dismissal of her lawsuit for damages which allegedly resulted from viewing and smelling a rotten roast.
At about 10 p.m. on April 14, 1979 Mrs. Harriet Prejean and her husband purchased a roast from the defendant grocery store for Easter dinner the next day. Both stated the top part of the meat appeared pink through the cellophane wrap. They went directly home and the roast was put in the refrigerator. The following morning Mrs. Prejean got up at 7:00 a.m., removed the roast from the refrigerator, unwrapped and washed it, but when she turned the meat over it was "green as grass" on the bottom. The odor made her gag and nauseous, but she did not vomit. She showed it to her mother (who lived next door), then immediately returned to the grocery to exchange the meat. The refund receipt was issued at 7:13 a.m. on April 15, 1979. On the way home Mrs. Prejean vomited in the car. She went to her mother's house and vomited blood in the bathroom, then returned home and told her husband about the bleeding. She tried to bathe and continued vomiting blood.
Plaintiff's mother, Mrs. Eva Thomas, corroborated the rotten condition of the roast and her daughter's vomiting blood. Eveline Koenig, a guest for the ill-fated Easter dinner, testified she went into the bathroom to help and saw blood in the tub. Mr. Prejean said he did not see the roast, but took his wife to the hospital because she was vomiting blood.
Dr. Tamer Acikalin, gastroenterologist, saw Mrs. Prejean at the hospital. He had no recollection of the incident and testified from his records which showed Mrs. Prejean was in the emergency room vomiting gastric contents and blood. Dr. Acikalin said Mrs. Prejean's life was in danger and she lost 15% of her blood volume. His diagnosis was a Mallory-Weiss syndrome "a tear of the lining of the junction where the foodpipe meets the stomach". He said the usual cause is forceful vomiting and can result from one incident. He performed a gastroscopy to examine the lining of the food pipe and duodenum and discovered two tiny ulcers. Importantly, he said the ulcers were not bleeding and did not cause plaintiff's crisis.
Mrs. Prejean was given a stomach wash and drugs to reduce stomach acidity. She was in intensive care for two and one-half days and discharged on April 20, 1979 (five days post-incident).
The trial judge made specific findings in written reasons:
Although I conclude that plaintiff has proved that the roast was spoiled, and that the sight and smell of it caused her to vomit, resulting in a life-threatening Mallory-Weiss tear of the esophogus, I believe the law does not allow recovery. Although I entertain personal reservation about the rightness of the rule, I conclude that the store's legal duty (as a warrantor of food, as a packager charged with knowledge of the defect, and despite its actual negligence in failing to discover the roast's condition) is limited to avoiding harm by consumption. Craig v. Albertson's, 415 So.2d 237 (2nd CCA 1982).
Was it necessary for Mrs. Prejean to eat the rotten roast in order to have a cause of action? If not, was the trial judge manifestly erroneous in finding that the meat was spoiled, and its condition and smell caused plaintiff's serious injury?
*62 Plaintiff urges we reject Craig and allow recovery under general tort liability (LSA-C.C. art. 2315) and redhibition (LSA-C.C. art. 2520). She argues defendant packaged the roast and is presumed to know its deleterious condition and under redhibition is liable for the price, damages, and attorney's fees. LSA-C.C. art. 2545.
Defendant counters that Craig and other cases exclude recovery unless the nauseous food is eaten. It argues plaintiff's case fails under a duty-risk analysis (art. 2315) since "no duty exists in Louisiana to protect against injuries caused by the mere observation of deleterious substances". It also claims redhibition is inapplicable because the appropriate basis to recover is "breach of implied warranty treated as a tort."
C.C. arts. 2315 and 2316 provide the source for tort liability. However, to determine the appropriate standard of conduct it is necessary to consult other codal articles, statutes, and jurisprudence. Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971).
The standard of conduct applicable to this case begins with Doyle v. Fuerst & Kramer, Ltd., 129 La. 838, 56 So. 906 (1911). Redhibition articles in the sales section of the Civil Code are also applicable because the purchaser of a defective thing has a cause of action against both the seller and the manufacturer of the thing. Phillips v. Browning Arms Co., 395 So.2d 310 (La.1980); Wright v. Ouachita Coca-Cola Bottling Co., Inc., 415 So.2d 309 (La. App. 2d Cir.1982).
Arts. 2315 and 2545 do not require that deleterious food be consumed in order to recover. We feel to judicially require consumption creates an artificial barrier without statutory foundation. But even if body contact (consumption) is read into Arts. 2315 and 2545, we are satisfied that inhalation of noxious, poisonous gases from putrid meat is no different or less dangerous than swallowing the meat.
Defendant points to our recital that consumption is one of several factors necessary for recovery. Banks v. Jefferson Bottling Company, 249 So.2d 228 (La.App. 4th Cir.1971). However, this case does not involve consumption, but body contact by the sense of smell.
All sales have an implied warranty of fitness for the purpose intended. The unwholesome food cases say that a packager warrants its food to be free from anything that causes injury to a consumer. English v. Louisiana Creamery, Inc., 181 So.2d 800 (La.App. 1st Cir.1965). Mrs. Prejean's burden is to establish by a preponderance of evidence that the food was in a deleterious condition when purchased and caused her illness. She need not negate every conceivable cause but must show that it is more likely than not that the condition of the food product caused the injury. Jackson v. Winn Dixie Stores, Inc., 439 So.2d 1147 (La.App. 4th Cir.1983).
Defendant argues that the medical evidence does not mention the cause of Mrs. Prejean's distress. Dr. Acikalin said he had no independent recollection of the incident or of Mrs. Prejean. He noted the record of the physical exam and history were "not detailed" and "relatively superficial". He said that was because plaintiff's life was in danger and attention was directed to helping her and not taking notes. Mrs. Prejean and her husband recalled that when they arrived at the emergency room there was another life-threatening situationa cardiac arrestand there was "lots of running and commotion".
Defendant contends that the Mallory-Weiss tear was caused by two pre-existing ulcers, but there is no medical evidence to substantiate that claim. Dr. Acikalin clearly said that the ulcers were not bleeding and had nothing to do with plaintiff's condition. Even defendant's physician, Dr. Ronald Martz, gastroenterologist, testified the usual cause of a Mallory-Weiss tear is forceful vomiting and wretching. He stated if the ulcers were not bleeding (as Dr. Acikalin reported) they did not cause the vomiting. Plaintiff had no prior ulcer problems or knowledge of the two tiny ulcers.
*63 The evidence abundantly supports the trial judge's conclusion that the roast was rotten, and its sight and smell caused Mrs. Prejean to forcefully vomit which resulted in the life-threatening Mallory-Weiss tear.
Under Gonzalez v. Xerox Corp., 320 So.2d 163 (La.1975) we are to set damages. Plaintiff suffered a tear of the esophagus and lost 15% of her blood volume. She was hospitalized for 5 days which included 2½ days in intensive care. A gastroscopy was performed and she received several blood transfusions. Her stomach was washed and she received drugs to reduce stomach acidity. She was followed for approximately one month after discharge and told not to work for 6 weeks. Due to the severity of the injury and its duration, $15,000 in general damages is adequate.

Special damages include:
 Hospital $2,998.70
 Drs. Acikalin/White 344.00
 Dr. Wagner 157.00
 Dr. Kappelman 70.00
 7 medicine bills 191.52
 Loss of earnings (6
 weeks at $120.00 per) 720.00
 _________
 $4,481.22

Because the roast had a latent or non-apparent defect, plaintiff is entitled to recover attorney's fees under LSA-C.C. art. 2545. Wright, supra; Phillipe, supra. Plaintiff's counsel obviously spent a great deal of time preparing and trying the lawsuit, and in preparation of a detailed brief in support of oral argument. A $3,500.00 legal fee is reasonable. Defendant is cast for all costs, including $250 for each expert, Drs. Acikalin and White, together with legal interest. Greer v. Ouachita Coca-Cola Bottling Co., 420 So.2d 540 (La.App. 2d Cir.1982).
The district court judgment is reversed and judgment is hereby entered in favor of Mrs. Harriet Thomas Prejean, wife of/and Early Prejean, and against The Great Atlantic & Pacific Tea Company, Inc., d/b/a A & P Food Stores, in the sum of $15,000 as general damages, $4,481.22 special damages, $3,500 attorney's fees, with legal interest from date of judicial demand, and $250.00 expert fees for Drs. Acikalin and White. Defendant to pay all court costs.
REVERSED.
RENDERED.
REDMANN, Chief Judge, dissenting in part.
For general damages I would award only the $6,000 that plaintiff sought in her original brief on appeal to this court. My reading of the record does not support the view that her experienced counsel so badly underestimated the value of her general damages that we should award two and a half times as much as he asked.
WILLIAMS, Judge, dissenting.
I respectfully dissent.
The majority of this court is in error in rejecting the decision in Craig v. Albertson's Southco, Inc., 415 So.2d 237 (La.App. 2d Cir.1982). Previous decisions by this court have held that proof of actual consumption is required to show that there has been a breach of the warranty of fitness for consumption. E.g., Banks v. Jefferson Bottling Co., 249 So.2d 228 (La.App. 4th Cir.1971).
Furthermore, the facts of this case do not merit an expansion of existing law. I do not find the evidence contained in the record as convincing as the majority. Although plaintiff's case has been ably presented by counsel at trial and on appeal, nevertheless the facts are not sufficient to sustain a decision that defendant's product caused plaintiff's injuries.