540 So.2d 1172 (1989)
Warren W. ARD
v.
KRAFT, INCORPORATED, et al.
No. 88 CA 1513.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
Writ Denied April 28, 1989.
*1173 Ben L. Guelfo, Baton Rouge, for plaintiff-appellee.
Edward J. Walters, Jr., Baton Rouge, for defendant-appellant, Kraft, Inc.
Edward A. Griffis, Bogalusa, for Emil J. Sziszak.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
This appeal presents a procedural maze which we must navigate before approaching an ultimate decision.
Alleging personal injury from the consumption of Parkay margarine, plaintiff Warren Ard sued Kraft, Incorporated (Kraft), the manufacturer of the margarine, and Emil J. Sziszak d/b/a Sziszak's Grocery (Sziszak)[1], the retailer.
The matter went to trial before a jury on May 6 and 7, 1986; on May 7, 1986, judgment was rendered in favor of the plaintiff and against the defendant Kraft in the sum of $3,070.00, to be reduced by 50% for the fault of the plaintiff. All other demands, including Kraft's against Sziszak for indemnity and Sziszak's against Kraft for indemnity and attorneys' fees, were dismissed. Kraft was cast for costs.
Plaintiff thereafter filed for post-trial relief. By judgment dated April 11, 1988, the trial court granted plaintiff judgment notwithstanding the verdict, finding plaintiff free of any negligence. A new trial was granted in favor of plaintiff and against Kraft on the issue of damages, reserving to Kraft the option to submit to additur within 15 days in the amount of $10,000.00 additional damages. Previously, in Reasons for Judgment dated March 2, 1988, the trial court had expressed the conclusion that Sziszak's demand against Kraft for *1174 attorneys' fees was allowable under the Louisiana jurisprudence and "granted" fees in the sum of $6,653.45. However, the April judgment was silent as to this award.
Kraft perfected this appeal to urge error on the part of the jury in its finding of Kraft's liability to the plaintiff and to urge abuse of discretion on the part of the trial court in granting judgment notwithstanding the verdict and additur.
The plaintiff, Mr. Ard, answered the appeal to urge the inadequacy of the additur and to seek an increase to $20,000.00. Sziszak answered the appeal to urge reversal of the judgment of May 7, 1986, denying attorneys' fees and to seek the amount of attorneys' fees "awarded" in the Reasons for Judgment plus an additional $1,500.00 for fees for appeal.

FACTS
On the morning of November 27, 1982, plaintiff and his wife went to Sziszak's Grocery to purchase, among other things, a pound of Parkay margarine. They went directly home, and plaintiff and his daughters put the groceries away. During the afternoon plaintiff left the house to do some social visiting, and he did not return until after dark.
While watching television with his children, Mr. Ard decided to go to the kitchen for a snack. He opened the refrigerator door and removed a stick of Parkay. Under a dim kitchen night-light, he "buttered" a leftover biscuit and returned to the television room. Without noticing anything unusual or distasteful about the margarine and biscuit, he ate the biscuit.
Approximately 45 minutes later plaintiff began to feel ill. Finally, he experienced a severe spell of vomiting, and he felt something give inside his chest area. Later he was diagnosed as having a ventral hernia. After plaintiff began vomiting, his daughter inspected the stick of margarine that plaintiff had used. Plaintiff testified that he, too, could see green specks on the margarine.
That same evening plaintiff sought medical treatment at the hospital emergency room. The doctor who examined him listed "staph food poisoning" on the written report.

MANUFACTURER'S LIABILITY
First we shall consider the jury's conclusion that Kraft was liable to plaintiff. On appeal, Kraft cites the basic principles applicable in strict tort products liability as summarized in Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986). Although the opinion was rendered shortly before the trial of the instant cause of action, and it consequently is controlling, we find nothing in Halphen to augment or diminish a plaintiff's burden of proof in an action brought for illness allegedly resulting from the consumption of deleterious food. Because the instant case involves a food product, we elect to consider the plaintiff's proof in light of the general rule of liability as stated in numerous personal injury actions brought for damages resulting from the consumption of prepared foods.
To establish liability of a manufacturer for damages which result from the consumption of prepared foods, a plaintiff must prove that the defendant's product contained a deleterious substance, that the substance was consumed, and that as a result of the consumption, the plaintiff sustained an injury. LeBlanc v. Louisiana Coca Cola Bottling Co., 221 La. 919, 60 So.2d 873 (1952); Rouse v. George A. Hormel & Co., 339 So.2d 1320 (La.App. 1st Cir.1976); Sticker v. General Foods Corp., 324 So.2d 568 (La.App. 1st Cir.1975), writ denied, 326 So.2d 380 (1976).
In the instant case, the jury concluded that the plaintiff had met his burden of proof. In order to reach this conclusion the jury had to find that the mold on the margarine was deleterious or that the margarine contained staphylococcus bacteria or toxin. The issue then becomes whether this finding is manifestly erroneous or clearly wrong. As stated in Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978):
The appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; *1175 there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).
The only evidence that the moldy margarine spread on a biscuit caused plaintiff's vomiting is the plaintiff's own testimony that he was the only one in the house to eat any margarine and the only one to get sick; that others ate biscuits and did not get sick. This testimony was completely uncorroborated, as plaintiff did not call any family members as witnesses. The lack of witnesses was not explained, despite the fact that plaintiff testified it was his daughter who found the mold on the stick of margarine after plaintiff had his spell of vomiting.
Mr. Durwood H. Neveu, qualified as an expert in the field of microbiology, was employed by the plaintiff to analyze the stick of margarine. He testified that his tests detected the presence of mold mycelia and mold spores, which he identified as the green specks seen on the pictures of the margarine entered into evidence. He explained that mold mycelia is a plant which differs from green outdoor plants in that it lacks chlorophyl and must get its nutrition from whatever it grows on. Since the analyst did not identify the mold down to genus and species, he could not testify as to whether this particular mold was a kind that needed air for growth or that could grow without air.
No test was made by the witness for the presence of staphylococcus bacteria, although the witness testified as to the method he would have used for the test had it been requested by the plaintiff.
On cross examination the witness admitted that he had no opinion as to the source of the mold on the stick of margarine. More importantly, he admitted that it would be unusual for a person to become sick from eating mold. He pointed out that mold is all around us and that we breath in mold constantly. Additionally, mold, such as blue cheese, is often eaten and relished.
Mr. Neal K. Whitman, Kraft's Product Production Manager, was called for cross examination by the plaintiff. Mr. Whitman explained the manufacturing process. His testimony cast serious doubt on the plaintiff's theory that the mold, allegedly in the middle of the stick, was there when the margarine left the factory. He testified that mold needs air to grow. All of the oxygen is removed from the margarine when it is pressed into a stick and wrapped. This procedure of elimination of oxygen is used to prevent air from turning the vegetable oil in the margarine rancid. Thus the manufacturer is motivated to perform the process to preserve the flavor and have a salable product. However, the witness testified that even if margarine were kept long enough to turn rancid, it would not have any harmful health effects.
Mr. Whitman was tendered and accepted as an expert in the field of microbiology. The primary ingredient in Parkay margarine is soybean oil (80%). About 16% is just water. The water and oil are mixed with salt, sodium benzoate, coloring, and vitamins. After the ingredients are blended together, the mixture is chilled down to 45 degrees, and then, under pressure, it is formed into a stick. The stick is over-wrapped with aluminum foil and then goes into a carton to a shipper. At no stage in the production process are the ingredients or the unwrapped sticks touched by human hands.
The witness identified the Garland, Texas, plant as the site of the manufacture of the margarine in question. He testified that during 1982 almost 187,000,000 sticks of margarine were produced at that plant. Other than the instant claim, there were no incidents of food poisoning reported. In addition to Mr. Ard's complaint, there was one other complaint about mold. He testified, as an expert, that food poisoning symptoms do not result from the consumption of mold. He unequivocally stated that staph is not a mold, but it is a bacteria. Under certain conditions which allow the staph to produce a toxin, it can cause food poisoning. However, the witnesses' description of the "common" symptoms of staph food poisoning did not correspond with the plaintiff's symptoms. He testified the initial bout of vomiting commonly lasts *1176 from 24 to 48 hours; other symptoms are diarrhea, cramps, and nausea, lasting from six to eight hours. Furthermore, the witness stated that the fact that Mr. Ard's vomiting occurred shortly after his ingestion of the margarine did not point to that food as the only cause of the food poisoning. Even if Mr. Ard had had nothing else to eat that day, he could have gotten food poisoning from food ingested the previous day or up to five days previous.
The only other testimony of significance was that of the two medical experts called by the plaintiff. Dr. Richard S. Godfrey, a surgeon, provided a connexity between the hernia suffered by Mr. Ard and his spell of vomiting on the night he sought emergency room treatment. Only Dr. Ursin T. Stafford was called to corroborate the plaintiff's testimony that he did, indeed, have food poisoning on November 27, 1982. He diagnosed Mr. Ard as having staphlyococcal food poisoning on a clinical presentation, that is, physical examination and taking of the patient's history; no cultures or lab tests were done. He admitted that staphlycoccus is not the same as mold. However, it was his opinion that the 45 minute period of time between the ingestion of the food and the spell of vomiting fit the clinical description of staph food poisoning.
In the instant case, the plaintiff's testimony that the moldy margarine made him sick was refuted by the testimony of the defendant's expert witness and even by the admissions of plaintiff's own witnesses that mold and staph are not the same. If the jury concluded that it was the mold which caused plaintiff to vomit, the jury was clearly wrong.
Similarly, if the jury inferred from the presence of mold in or on the margarine that the margarine contained staphylococcus bacteria, such an inference was unwarranted and unreasonable. Recovery has been denied in numerous instances when a causal connection between the ingestion of the allegedly contaminated food and the illness has been lacking.
In Rouse v. George A. Hormel & Co., supra, although plaintiffs proved the presence of a sliver of glass in a can of luncheon meat and proved that they became ill after eating the meat, we affirmed the conclusion that they failed to prove that their illness resulted from the consumption of the meat.
In Banks v. Jefferson Bottling Company, 249 So.2d 228 (La.App. 4th Cir.1971), plaintiff, who ingested a roach while drinking a soft drink and aggravated a preexisting colostomy, did not present a preponderance of credible evidence to connect the contaminated drink with her illness.
In Walker v. American Beverage Company, 124 So.2d 157 (La.App. 4th Cir.1960), plaintiff failed to establish that his child's stomach disorder was caused by a plant stalk taken from the bottle from which he had drunk.
Finally, in a case most factually similar to the instant one, Jiles v. Church's Fried Chicken, Inc., 441 So.2d 393 (La.App. 4th Cir.1983), the evidence supported a finding that a two-year-old boy suffered from salmonella food poisoning, but it did not support the conclusion that the source of the bacteria was the defendant's chicken.
In urging that he met his burden of proof, the plaintiff herein relies on the case of McCauley v. Manda Brothers Provisions Company, 202 So.2d 492 (La.App. 1st Cir.1967), affirmed, 252 La. 528, 211 So.2d 637 (1968). This landmark food poisoning case notes that a plaintiff is not required to produce actual analysis of the food in order to establish its unwholesome condition. Despite this general statement, plaintiff Ard's reliance is misplaced.
In McCauley a workman allegedly became ill after eating a catsup, bread, and hot sausage sandwich. One of the defendants was Bearden Sandwich Company, Inc. (Bearden). The trial court found in favor of the plaintiff and against Bearden, but the trial court excluded evidence that two other persons who consumed sandwiches which were made at the same time and under the same conditions as the sandwich consumed by the plaintiff also suffered illness. The plaintiff made a proffer *1177 of this evidence. On appeal, despite other evidence in the record that is similar to Mr. Ard's evidence, this court remanded the case for the trial court to consider the excluded evidence which could support causation. The case went to the Louisiana Supreme Court on a separate issue, but in dicta that court noted that the proffered evidence could have been considered "to establish a causal connection between his eating of the sandwich and his subsequent illness...." McCauley, 211 So.2d at 640.
Because plaintiff Ard failed to carry his burden of proof of causation, we must reverse the jury's finding of liability on the part of defendant Kraft.

ATTORNEYS' FEES
Although the trial court judgment in favor of the food retailer and against the plaintiff is final and not before us on appeal, there remains the retailer's third party demand against the manufacturer for attorneys' fees.
Pursuant to LSA-C.C. art. 2545 and applicable jurisprudence the recovery of attorneys' fees against a manufacturer has been allowed only in contract actions for redhibition and in tort actions for products liability. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1980).
The third party demand requires that we initially examine the nature of the plaintiff's cause of action against the retailer. Although the plaintiff sued the manufacturer in strict liability and in negligence, he made no demand for attorneys' fees. The plaintiff sued the retailer for negligence, not in redhibition, and made no demand for attorneys' fees against this defendant also. The retailer filed a third party demand against the manufacturer for indemnity and attorneys' fees, but filed no claim for the purchase price of the margarine which he had "made good" to the plaintiff long before suit was filed.
We state the nature of these pleadings merely for clarity, as the case of Philippe v. Browning Arms Co., supra relieved pleaders of concern over pleading the theory or theories of the case in order to claim attorneys' fees.
In the instant case the special jury charge submitted by the retailer properly stated the law as to the plaintiff's burden of proof. A plaintiff cannot recover for damages against a grocery store owner in the absence of proof that the store took part in the preparation, processing or manufacturing of the product sold, or that the store owner subjected the product to improper care. Improper care is the essence of negligence. Lesher v. Great Atlantic & Pacific Tea Co., 129 So.2d 96 (La.App. 2d Cir.1961). A non-manufacturing seller, such as a grocery store, is not presumed to have knowledge of a defect in a product; presumed knowledge is the essence of strict liability imposed on the manufacturer. A grocery store owner who did not manufacture a defective product is not responsible for injury and damages resulting from such product in the absence of a showing that he knew or should have known that the product was defective. A grocer can reasonably rely on the assumption that a sealed container of foodstuff obtained from a reputable dealer was not contaminated. Spillers v. Montgomery Ward & Co., Inc., 294 So.2d 803 (La.1974); Reeves v. Great Atlantic & Pacific Tea Co., 370 So.2d 202 (La.App. 3d Cir.), writs denied, 371 So.2d 835 (La.1979); Lesher v. Great Atlantic & Pacific Tea Co., supra.
The case of Philippe v. Browning Arms Co., supra, which is relied upon by the third party retailer herein, makes pleading easier, it does not obliterate concern for the nature of the alleged liability as triggering entitlement to attorneys' fees.
We noted the distinction in Walker v. Maybelline Co., 477 So.2d 1136, 1140 (La. App. 1st Cir.1985), writ denied, 481 So.2d 1333 (1986):
Facts which give rise to a products liability suit can contain elements of both tort and redhibition as shown in the case relied on by the plaintiff, Philippe v. Browning Arms Co., (citation omitted). In that case the Supreme Court, on rehearing, affirmed the award of attorney's fees by the appellate court, reversing its original position denying such an *1178 award. The standard of conduct in Philippe, supra, was based upon the codal articles dealing with sales and therefore, the awarding of attorney's fees was founded in redhibition, namely LSA-C.C. art. 2545.
Here, the liability of Maybelline is predicated not upon redhibition but tort through LSA-C.C. art. 2315. We note that the present case is not one in which the product was improperly designed or manufactured making it unfit for its intended use as was the shotgun shown to be defective in Philippe, supra. Rather, the mascara involved here was a satisfactory product with the only flaw being its lack of an adequate warning of a dangerous propensity known to the manufacturer.
The concurring opinion in Walker v. Maybelline, 477 So.2d at 1141, took exception with the way we denied attorneys' fees:
[B]y failing to distinguish between defects and dangerous propensities, the latter which sould be treated solely on negligence concepts, we have dug ourselves into a hole on attorney fees.... I agree that attorney fees should not be awarded and that it would be a completely unjust and almost incomprehensible straining of the law to do so. However, a defect is a defect is a defect. The fact of the matter is there is no defect, and we shouldn't call it one. We should be dealing strictly in negligence concepts where attorney fees are not permitted.
In the instant case argument could be made that the margarine was not defective, and therefore the award of attorneys' fees against a non-liable manufacturer would be erroneous. But such circular considerations will only bore the attorneys' fees hole a bit deeper. The rationale of either the majority or the concurring opinion in Maybelline suffices to deny this third party's claim for attorneys' fees. The cause of action against the retailer is not and never wasfor a defective product, but for negligence because of the burden of proof peculiar to food products cases. The attorneys' fees incurred by the retailer Sziszak were incurred to defend against a negligence action. He cannot collect them from Kraft any more than he could if he had allowed some Parkay margarine to spill on the floor causing a slip and fall lawsuit.
For the foregoing reasons the judgment of the trial court against Kraft and in favor of the plaintiff, Mr. Ard, is reversed, and the plaintiff Ard shall pay all costs in the lower court and half of the costs on appeal. The judgment of the trial court in favor of Kraft and against Sziszak is affirmed, and Sziszak shall pay half of the costs on appeal.
REVERSED IN PART; AND AFFIRMED IN PART.
NOTES
[1] Although plaintiff included Andrew Sziszak d/b/a Sziszak's Grocery as a co-defendant in his petition, the suit proceeded against Emil Sziszak d/b/a Sziszak's Grocery only.