580 So.2d 556 (1991)
Viola JOHNSON
v.
SOUTH PACIFIC CANNING COMPANY.
No. 90 CA 0365.
Court of Appeal of Louisiana, First Circuit.
May 16, 1991.
Jewel E. Welch, Baker, for plaintiff-appellee Viola Johnson.
W. Paul Wilkins, New Orleans, for defendant-appellant South Pacific Canning Co.
Before LOTTINGER, SHORTESS and CARTER, JJ.
SHORTESS, Judge.
The facts of this case are simple and for the most part undisputed. Viola Johnson (plaintiff) purchased a can of "Breast O'Chicken Chunk Light Tuna" from a local A & P grocery in Baton Rouge on July 1, 1987, went to her mother's home, opened the can, and in the presence of her mother and sister, began eating the tuna product (with a fork) directly from the can.[1]
Plaintiff had eaten about half of the can of tuna when she bit down on a hard object and cracked a molar. The object was translucent white and round. Virginia Covington, plaintiff's sister, thought the object was a pearl. She experienced pain immediately and took Tylenol and "oragel." She went home, told her husband, and called the A & P and told them she had found an object, "something like a pearl," in the tuna fish. Plaintiff spoke with a dentist sometime thereafter, but did not have the $25.00 "up front" that he required. On July 1, 1988, she filed this suit against South Pacific Canning Company (defendant), the manufacturer of "Breast O'Chicken Chunk Light Tuna."
Plaintiff did not obtain treatment for the tooth until March 22, 1989, when she presented a "cracked lower left first molar with extensive decay" to Dr. William P. Welch, Jr., who testified at trial on her behalf. Dr. Welch testified that he excavated the decay and placed a temporary filling in the tooth. At the time of trial plaintiff had not returned for a permanent filling. Welch also testified that it was "very probable" that plaintiff's tooth would require a root canal and crown in the near future.
Plaintiff and defendant jointly introduced the object and a lab analysis which establishes that it is a "fish eye lens." At the close of the evidence, defendant asserted that the object was "natural" to the product, relying on Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421 (La.App. 1st Cir.) writ denied, 248 La. 468-469, 179 So.2d 641 (1965) (involving a cherry pit found in a piece of cherry pie), and that therefore there was no breach of the implied warranty of fitness for consumption.[2]
*557 The so-called "foreign-natural" test has been applied to absolve a restaurant of liability where a pearl was found in a fried oyster. Title v. Pontchartrain Hotel, 449 So.2d 677 (La.App. 4th Cir.), writ denied, 450 So.2d 967 (La.1984). The rationale has also been applied to a piece of bone in a package of ground meat, although the court tempered the harshness of the test by requiring defendant to disprove negligence in the processing of the meat because "the reasonable expectation of the ordinary consumer is that the processor and vendor of ground meat would exercise [reasonable care] ... in the removal of bones from the meat." Loyacano v. Continental Ins. Co., 283 So.2d 302, 306 (La. App. 4th Cir.1973). Compare however, Loyacano, 283 So.2d 302, 306-307 (Lemmon, J. concurring), where it is pointed out that the cause of action is in tort, not in contract. Implicit in Justice Lemmon's concurrence is that since Louisiana's recognition of strict products liability in Weber v. Fidelity & Casualty Ins. Co., 250 So.2d 754 (1971), the concepts of negligence and implied warranty are foreign to a cause of action against a manufacturer for damage caused by its product.[3]
Musso was decided six years before a products liability cause of action existed in Louisiana. In the context of an implied warranty of fitness for consumption, the "foreign-natural" test establishes a bright line for that warranty: if the object is "natural" to the food, then there is no implied warranty that it will not be there and the plaintiff must then prove negligence.[4]
Weber states the manufacturer's obligation under strict products liability as follows:
A manufacturer of a product which involves a risk of injury to the user is liable to any person ... who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated.
Weber, 250 So.2d at 755.
Plaintiff's burden is to show that the product is "defective," which Weber defines as "unreasonably dangerous to normal use." Id. The trial court found defendant's tuna product to be unreasonably dangerous to normal use because a consumer, like plaintiff, would not expect a hard object to be in flaked tuna (and might eat it directly from the can). Defendant argues the trial court erred in not following Musso because the Musso court rejected the "reasonable expectation" test in favor of "foreign-natural."
We believe if "foreign-natural" exists at all in the context of strict products liability, it could only be as a defense to the showing that the product is unreasonably dangerous. We need not reach that decision, however, because defendant has not shown that the fish eye lens is "natural" to its product. In Musso the court suggested that the "foreign-natural" test is not self-executing:

*558 [T]he warranty implicit in the sale of food must be construed in the light of the common knowledge with reference to the nature and character of the food being served ... common experience dictates that one eating the meat of animals, fowl or fish should do so with the knowledge such foods may contain pieces of bone.
Musso, 178 So.2d at 426. Defendant has neither shown the eye lens to be that of a tuna nor demonstrated "common knowledge" or "common experience" which would suggest that the tuna might contain it. Id. See also Loyacano, 283 So.2d at 306.
The trial court reasoned that an inflexible application of "foreign-natural" would lead to absurdity, suggesting that fins and entrails would be no less "natural" than an eye and that none should be in a can of tuna. For the reasons expressed herein, we find no manifest error in the trial court's reasons and judgment, and affirm its decision at defendant's costs.
AFFIRMED.
NOTES
[1] While the petition alleges plaintiff purchased the can July 1, 1987, and opened the can on July 3, plaintiff testified she purchased and opened the can on the same day.
[2] Defendant asserted that because the lens was "natural," there was no liability without specifying the source of the liability. The implied warranty of fitness was first recognized in LeBlanc v. Louisiana Coca-Cola Bottling Co., 221 La. 919, 60 So.2d 873, 875 (1952). The "foreign-natural" test of Musso was formulated for this cause of action.
[3] The early food and drink cases were actually the precedent for Weber because they imposed a higher duty upon the food purveyor than simple negligence, which was otherwise the only cause of action against a manufacturer until Weber. For a thorough discussion of these cases and their interrelationship with Weber, see generally Robertson, Manufacturer's Liability for Defective Products in Louisiana Law, 50 Tul.L.Rev. 50 (1975).
[4] It is to be observed that Musso relied upon case law from other jurisdictions, most notably California, in fashioning the "foreign-natural" test. See Musso, 178 So.2d at 425-26, quoting Mix v. Ingersoll Candy, 6 Cal.2d 674, 59 P.2d 144 (Ca.1936). The "foreign-natural" test was first developed in Mix and, importantly, the test involved a two-pronged inquiry: first, is the object foreign or natural, and second, if the object is natural, is its presence in the product "common knowledge and within the reasonable expectation of the consumer." Kilpatrick v. Holiday Inns, Inc., 226 Cal.App.3d 855, 860, 277 Cal.Rptr. 230, 234 (1991). See generally Id. at 861, 277 Cal.Rptr. at 234 (discussing the various out-of-state decisions which have erroneously omitted the second prong). While Musso does not specifically state this second prong, there is some language that suggests that "common knowledge" of the consuming public was considered a factor. See Musso, 178 So.2d at 426.