602 So.2d 77 (1992)
Theresa M. SIMEON, et al.,
v.
John DOE, d/b/a The Sweet Pepper Grill, et al.
No. 91-CA-0483.
Court of Appeal of Louisiana, Fourth Circuit.
May 28, 1992.
Rehearings Denied July 15, 1992.
*79 T. Peter Breslin, Chehardy, Sherman, Ellis & Breslin, Metairie, and Scott Labarre, Wendell H. Gauthier, Gauthier & Murphy, Metairie, for plaintiffs/appellants.
Gus A. Fritchie, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, for defendants/appellees.
Craig R. Nelson, Christina P. Fay, Hulse, Nelson & Wanek, New Orleans, for defendant/ appellant.
H.F. Foster, III, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, for defendant/appellee.
Before BARRY, KLEES, CIACCIO and WARD, JJ., and JAMES C. GULOTTA, J. Pro Tem.
WARD, Judge.
In this lawsuit plaintiffs Theresa Simeon, Floyd Simeon, Jr. and Edward Simeon seek damages for the death of Floyd Simeon, Sr., husband and father, who became ill and ultimately died of a septicemic infection caused by eating raw oysters which contained a rare bacteria, vibrio vulnificus. Mr. Simeon's illness was particularly painful, and the infection was so lethal that amputation of Mr. Simeon's limbs did not stop it. He died of the infection three weeks after eating the oysters. No one questions the cause of the illness, the necessity for amputation, or the excruciating pain and suffering Mr. Simeon endured prior to his death. This appeal raises only the questions of who, if anyone, is liable for Mr. Simeon's death, and whether the damages awarded are adequate.
Plaintiffs appeal that part of the trial court judgment which held that neither M.J. Bilich Oyster Co. who supplied the oysters to the restaurant, nor The Sweet Pepper Grill who served the oysters were liable. Defendant, the Louisiana Department of Health and Human Resources, appeals that part of the judgment which held that it was liable for failure to give adequate warning to people with immune deficiencies of the danger of eating raw oysters.
We affirm the trial court's judgment exonerating the seafood supplier and its customer, the restaurant, from any liability. Neither are responsible under a strict liability theory for serving or distributing deleterious food which they neither packaged, processed, nor prepared. Nor have the plaintiffs proven these defendants negligent.
We reverse the trial court's judgment holding DHHR liable. The trial court erred by denying DHHR legislative immunity from tort liability for its discretionary decisions. Even if DHHR is not immune, we find that DHHR was not negligent. Additionally, plaintiff's suit was not timely filed against DHHR.
On September 6, 1986, Floyd Simeon, Sr. and his son ate raw oysters at the Sweet Pepper Grill at the Riverwalk in New Orleans. Those oysters were supplied to the grill by M.J. Bilich Oyster Company. Thereafter, on September 9, 1986, Simeon was hospitalized for pain associated with severe blisters developing on his legs. After attempts to stop the spreading of the blisters failed, Simeon's legs were amputated. Despite these efforts, Simeon died on September 23, 1986. Death resulted from the septicemic infection caused by vibrio vulnificus bacteria. This rapidly debilitating, rare infection is sometimes, but not always, a result of eating raw oysters by persons suffering from certain underlying *80 physical conditions which weaken the immune system. Simeon fell into this category. In the years prior to his death he had cirrhosis of the liver, colon cancer, ulcers and duodenitis.
The presence of the deadly bacteria first became known in August 1982. After learning of it, DHHR included warnings about this bacteria in its monthly morbidity report, describing the danger it posed to those people with weakened immune systems. This report was sent to every physician and hospital in Louisiana, the Center for Disease Control in Atlanta, Georgia, and health departments in neighboring states. Testimony at trial was inconclusive as to whether the morbidity report was sent to the news media.
Even if DHHR did not give the report wide public circulation, it nevertheless considered a warning to the medical community more appropriate than to the general public because this bacteria only affects a very limited number of people, those suffering from diseases and conditions causing impaired immune responses, illnesses which would have more than likely required treatment by physicians. The morbidity report was intended to alert physicians of the bacteria so that they in turn could inform their patients of the dangers of consuming raw oysters and other raw seafood.
While plaintiffs do not concede that negligence cannot be proven, their claims are based more on strict liability. For the purpose of this opinion their claims may be considered in two parts: (1) products liability, and (2) the seller's warranty that food sold is wholesome.
As to the first, products liability, they contend wholesalers and restaurants are strictly liable for the distribution and sale of food which is deleterious and causes damages because food in this instance is similar to a product, and Louisiana holds strictly liable those who manufacture and distribute a defective product. In this situation claims for damages from deleterious food stems from products liability. Plaintiffs believe this situation is similar to a manufacturer's strict liability for a defective product and insists that Bilich and Sweet Pepper are strictly liable for distribution of a deleterious food "product". They rely for support on Prejean v. Great Atlantic & Pacific Tea Company, Inc., 457 So.2d 60 (La.App. 4th Cir.); writ denied at 462 So.2d 194 (La.1984), which held A & P strictly liable for contaminated meat covered with mildew, and Johnson v. South Pacific Canning Company, 580 So.2d 556 (La.App. 1 Cir.1991), which held South Pacific strictly liable for a foreign substance in a can of tuna fish which had a hard fish eye lens mixed with the fish. This we believe holds that a "manufacturer" of food that is contaminated is strictly liable if they packaged, processed, or prepared it.
The flaw in plaintiffs' argument is that neither Bilich nor Sweet Pepper is a manufacturer of a product. Wholesalers sell directly to restaurants who in turn sell to customers the exact same product that fishermen harvested from the sea. There is no change in it, and with the exception of packing ice under, around, and on top of the oysters, neither the wholesaler nor the restaurant does anything to alter the food until the customer orders, and then it is opened and served to the customer.
In Ard v. Kraft, Inc., 540 So.2d 1172 (La.App. 1st Cir.); writ denied at 542 So.2d 515 (La.1989), the First Circuit held that in the absence of proof that the non-manufacturing seller took part in the preparation, processing or manufacturing of the product sold, the seller cannot be held strictly liable. Because neither Bilich nor Sweet Pepper are manufacturers, Prejean and Johnson are not applicable. Buying and selling raw oysters is not like the butchering and packaging of meat in Prejean, or the processing and canning of tuna in Johnson. In each of those cases the product was changed, and negligence is apparent, and in each case the analogy to manufacturing a defective product which brings forth strict liability is appropriate. We agree with each result. One who manufactures, packages, processes, or prepares a product that is defective or contaminated is strictly liable; a consumer should not *81 have to prove the negligence. Prejean's meat would not have been green unless A & P was negligent; Johnson's tuna would not have had a fish eye lens unless South Pacific Canning was negligent in cleaning and canning. However, in this case, where the product is unchanged, where it is the same product that comes from the sea, just as any freshly caught fish or shrimp, the principles of Ard, supra are more applicable and for this reason we hold that neither The Sweet Pepper Grill nor M.J. Bilich Oyster Company is strictly liable even though the oysters did in fact contain a deleterious substance.
Plaintiffs' second argument for strict liability is based on a seller's implied warranty that food sold is wholesome and fit for consumption. Earlier appellate court decisions have held there is strict liability based on this implied warranty of wholesomeness, a theory sounding in contract, Musso v. Picadilly Cafeterias, Inc., 178 So.2d 421 (La.App. 1st Cir.) writ denied, 248 La. 468, 179 So.2d 641, 248 La. 469, 179 So.2d 641 (1965). But strict liability did not follow the warranty. There was an exception, the "foreignnatural" test. Title v. Pontchartrain Hotel, 449 So.2d 677 (La. App. 4th Cir.) writ denied, 450 So.2d 967 (La.1984). Under this test, plaintiff loses; the bacteria is admittedly "natural". Plaintiffs, therefore, argue for a warranty theory without the "foreign-natural" test, suggesting that Louisiana should embrace the "reasonable expectation" test that is used in other states, meaning strict liability is determined by whether an ordinary consumer would reasonably expect to encounter the substance in the food. Louisiana has not held restaurants or their suppliers liable under this theory and plaintiffs acknowledge there is no support for it at this time. Therefore plaintiffs' cause of action is limited to showing negligence of either Bilich or Sweet Pepper.
Plaintiffs do not seriously argue that they have proved negligence, and the trial court made a finding of fact that these defendants were not negligent. Vibrio vulnificus bacteria occurs naturally in the waters of the Gulf of Mexico. In the course of its feeding, an oyster may have the bacteria within its gut. However, if bacteria is present in one oyster this does not necessarily mean that the whole bed of oysters will have the bacteria; some may have it, others will not. An oyster feeds by sucking in water with food, but it also may contain the bacteria; and when it expels the water, it also expels the bacteria if it were present. So that a single oyster may or may not have the bacteria at one moment or another. Oysters containing the bacteria can look, taste and smell wholesome. The only way to detect this bacteria is through a homogenization process conducted on each oyster. However, this destroys the oyster, and neither the Sweet Pepper Grill nor Bilich Oyster Company could perform the tests to detect this bacteria and still serve raw oysters. Neither party had knowledge of vibrio vulnificus bacteria in raw oysters at the time of decedent's death. Furthermore, neither knew that decedent's medical history would put him at risk of acquiring this infection from the bacteria.
The Sweet Pepper Grill carefully stocked the oysters, making sure they were refrigerated. Employees shucking oysters followed approved sanitary procedures. The oysters eaten by Mr. Simeon and his son appeared wholesome to them at the time and Mr. Simeon had frequently eaten raw oysters all of his adult life. M.J. Bilich Oyster Co. scrupulously followed State regulations, purchasing oysters only from licensed fishermen who harvested oysters from state-approved oyster beds. The oysters eaten by Mr. Simeon were more likely than not harvested the very day Bilich purchased and delivered them, fresh and refrigerated, to the Sweet Pepper Grill.
In summary, plaintiffs cannot recover under theories of strict liability for a defective product or for breach of an implied warranty. Their claims are limited to claims of negligence under La.C.C. art. 2315, and the trial court's finding of fact exonerating these defendants from negligence is subject to review only for manifest error. We find no manifest error and we agree with the trial court's findings.
*82 Turning now to the appeal of DHHR, it argues the trial judge erred by denying it the immunity granted by statute, LSA-R.S. 9:2798.1, which states, in pertinent part:
"B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
... (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."
In its reasons for judgment, the trial court stated that DHHR was not entitled to immunity in this case because it had a duty to aggressively warn the general public about this bacteria but failed to do so. The court found that DHHR's duty to warn of the vibrio vulnificus bacteria was not discretionary within the meaning of Section B. If there is a duty to warn, this of course means it is not discretionary; but it is a play on words to say that this means that DHHR is not making discretionary decisions as to the manner by which it will discharge its duty; and while DHHR may have had a duty to warn, which was mandatory not discretionary, its decision as to the most appropriate method of warning clearly falls within the meaning of "policy-making or discretionary acts" of LSA-R.S. 9:2798.1, shielding DHHR from claims for negligence. Whether one agrees with the decision to target the warning to health care providers does not matter. What matters is whether that was a decision that may fairly be deemed an exercise of discretion and we hold that when DHHR chose it as the best method of warning, that decision did not come within the exception which withdraws immunity for decisions or acts that are "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct." As a matter of fact, DHHR's choice of the method of warning may have been the most appropriate. Mr. Simeon was under the care of a physician for those illnesses previously described. His physician received the 1982 DHHR monthly morbidity report before he began treating Mr. Simeon, but candidly admitted that he did not read it, and as a consequence he did not advise Mr. Simeon or anyone else of the danger of eating raw oysters.
In a remarkably similar case, Winstead v. Ed's Live Catfish and Seafood, Inc., 554 So.2d 1237 (La.App. 1st Cir.1989); writ denied at 558 So.2d 570 (La.1990), Winstead became ill from eating raw oysters contaminated by the bacteria vibrio vulnificus. We agree entirely with the First Circuit's holding that although DHHR certainly had a duty to issue some type of warning, the DHHR fulfilled this duty when it published the Monthly Morbidity Report.
The fact that the DHHR chose not to aggressively disseminate the information contained in the Monthly Morbidity Report to the general public does not constitute a breach of the duty to warn. Since the bacteria only attacks a small percentage of the population, i.e., those with liver disease, kidney disease or other immune-suppressive condition, the DHHR was reasonable in its conclusion that the best way to warn these people was through the medical community. The Monthly Morbidity Report was sent to every physician in Louisiana, the Center of Disease Control in Atlanta, Georgia, and the health departments of several states, including Mississippi. We hold that this satisfied the duty to warn incumbent on the DHHR due to its specialized knowledge and position of public trust. 554 So.2d at 1244. Winstead, supra at 1237.
Whether a duty exists is a question of law, and for the reasons expressed above in Winstead we find DHHR had a duty to warn. Breach of duty is a question of fact, and like the First Circuit, we find that DHHR did not breach its duty to warn. The trial court's finding of fact that DHHR breached its duty is manifestly erroneous.
For the purposes of the above discussion we have assumed that DHHR did *83 not publicly warn. There is evidence that it did. We believe the trial court erred by excluding evidence that showed there was a public warning. The State possessed information as early as 1982 that showed the consumption of raw oysters could lead to serious injuries and maybe even death in certain individuals. DHHR and other State officials made public through interviews with news media information that eating raw oysters could be dangerous to some individuals. DHHR offered as evidence a May 17, 1985 newspaper article which quoted DHHR officials who said that dangerous bacteria present in raw oysters can be killed by proper cooking. It was offered to show the public was warned that dangers existed in eating raw oysters. We believe this evidence was relevant, and admissible, not hearsay, because it was not offered for the truth of the matter contained therein, but only offered to show that the matter was made public. La.C.E. art. 801(C). Moreover, this evidence becomes crucial in considering whether plaintiff's suit was barred by liberative prescription or whether contra non valentum prevented the tolling of time limitations, and we discuss it below.
We also believe the trial court erred by excluding evidence offered by DHHR tending to show there was no breach of the duty to warn. DHHR offered statistics from the National Marine and Fisheries Department of the United States Department of Commerce showing the huge volume of oysters harvested and consumed in Louisiana to prove the extremely low incidence of vibrio vulnificus infection, and to show it was more prudent to target its warning by sending it to health care providers who would inform those very few who were at risk.
Appellate courts in the past have accorded wide discretion to trial courts, holding that as a general rule whether or not evidence is relevant is a decision within the trial judge's discretion and his ruling will not be disturbed absent a clear abuse of discretion. Citizens Bank and Trust Co. v. Consolidated Terminal Warehouse, Inc., 460 So.2d 663 (La.App. 1st Cir. 1984). However, if evidence offered by a party tends to make the existence of a fact that is of consequence more probable than it would be without the evidence, it is relevant and admissible unless other reasons require exclusion. La.C.E. art. 401. We do not find other reasons here that would justify exclusion and we are satisfied that the proffered evidence is admissible and we will consider it. It supports our belief that the DHHR did not breach its duty to warn.
If DHHR breached its duty, then there is a question of whether plaintiffs' claim has prescribed. We hold the trial court erred in overruling DHHR's exception of prescription. The decedent ate raw oysters at the Sweet Pepper Grill on September 6, 1986 and died on September 23, 1986. Plaintiffs filed their original petition on March 23, 1987 naming as defendants John Doe (later identified as Big Easy, Inc.), d/b/a Sweet Pepper Grill and its insurer, USF & G. On September 10, 1987, these defendants filed a third party demand against M.J. Bilich Co. who filed a third party demand against DHHR. Plaintiffs amended their petition to include Bilich as a defendant, and then amended their petition again to include DHHR as a defendant on November 17, 1987, fourteen months after this cause of action arose.
The applicable prescriptive period for delictual actions is one year and commences to run from the day injury or damage is sustained, LSA-C.C. art. 3492, and plaintiffs' suit against DHHR was filed more than 14 months after Simeon's death. A timely filed suit as to one solidary obligor interrupts prescription as to all. LSA-C.C. art. 1793. Plaintiffs alleged that the timely sued defendants and DHHR were solidarily liable, however, when all other defendants were dismissed, plaintiffs could no longer prove a solidary obligation between DHHR and a timely sued defendant. Therefore, prescription was not interrupted with regard to plaintiffs' action against DHHR because of a timely filed suit against a solidary obligor. On its face, therefore, it appears that this action has prescribed. See Bankston v. B & H Air Tools, Inc., *84 486 So.2d 199 (La.App. 1st Cir.); writ denied at 488 So.2d 1021 (La.1986).
However, the trial court found that the doctrine of contra non valentum applied in this case and operated to suspend the running of prescription until October 7, 1987 when Bilich filed its third party demand against DHHR. The contra non valentum doctrine provides generally that prescription does not run against a party who is unable to act, Corsey v. State Department of Corrections, 375 So.2d 1319 (La.1979) and as applied to this case, unable to act because plaintiffs did not know of the cause of action against DHHR. The trial judge found that DHHR withheld information from the general public and, as a result, plaintiffs were unaware of the existence of a cause of action against DHHR until that date. However, as we have said above, the erroneously excluded evidence of newspaper articles which reported interviews of State officials speaking about the danger of eating raw oysters refutes any finding that DHHR withheld information that prevented plaintiffs from knowing they had a cause of action against DHHR.
On the same issue, we also find that the trial court erred in allowing plaintiff to file a post-trial affidavit without reopening the case and allowing this witness to be cross-examined. Reopening a case to receive additional evidence is largely within the discretion of the trial court, and the trial court's decision will not be reversed unless there is a clear abuse of discretion. Yeutter v. Lewis, 334 So.2d 728 (La.App.1976). When the case is reopened to receive evidence that is testimonial in nature, all parties must be given the opportunity to cross-examine the witness. La. C.E. art. 607 A, C, art. 611(B). In this case the question is not whether the trial court abused its discretion in reopening the case; the trial court erred by receiving as evidence an affidavit without reopening the case, depriving the parties of their right of cross examination. We will not, therefore, consider the affidavit of Mrs. Simeon in deciding the issue of prescription. In the absence of the affidavit there is no support for a finding by the trial court that the doctrine of contra non valentum is applicable, and as a consequence the suit against DHHR was barred by liberative prescription.
For the foregoing reasons, we affirm the trial court's ruling which dismissed the suit against Sweet Pepper Grill and M.J. Bilich Oyster Company and reverse the trial court's ruling which found DHHR liable.
AFFIRMED IN PART; REVERSED IN PART.
GULOTTA, J., concurs in part and dissents in part.
KLEES, J., dissents in part for reasons assigned by GULOTTA, J.
GULOTTA, J. Pro Tem., concurs in part and dissents in part.
I concur in that part of the majority opinion exonerating the seafood supplier and the restaurant from liability. However, I dissent from that part of the majority decree exonerating the DHHR from liability.

PRESCRIPTION
The trial judge found that the doctrine of contra non valentum applied in this case and operated to suspend the running of prescription until October 7, 1987, the date on which Bilich filed its third party demand against DHHR. As stated in Corsey v. State Department of Corrections, 375 So.2d 1319 (La.1979), the contra non valentum doctrine provides generally that prescription does not run against a party who is unable to act. The trial judge found that DHHR withheld information from the general public which resulted in plaintiffs being unaware of the existence of a possible cause of action against DHHR until they received Bilich's third party demand. The judge based this finding in part on a post-trial affidavit by Mrs. Simeon which stated that Bilich's third party demand was her first notice of the State's knowledge and alleged failure to warn of vibrio vulnificus bacteria found in raw oysters.
DHHR argues the trial court erred in allowing a trial witness to file a post-trial *85 affidavit without reopening the case and allowing this witness to be cross-examined. I disagree. I cannot say the trial judge's action on his evidentiary ruling is an abuse of discretion. See Combs v. Hartford Ins. Co., 544 So.2d 583 (La.App. 1st Cir.); writ denied at 550 So.2d 630 (La.1989).
Despite DHHR's arguments to the contrary, the record in this case clearly supports the finding that DHHR failed to disseminate information to the general public thereby effectively preventing plaintiffs or the public in general from having knowledge that a cause of action may exist against DHHR. Because DHHR only disseminated information about the presence and danger of vibrio vulnificus bacteria in raw oysters to the medical community and not to the general public, it is unreasonable to suggest that plaintiffs or their counsel, who are not members of the medical community, should have been aware of DHHR's studies on this bacteria and its knowledge that this bacteria could be deadly to people in certain risk groups. The method by which DHHR attempted to warn about this bacteria was clearly inadequate and effectively amounted to the withholding of information needed by the public for its health and safety.
For these reasons, I find that the doctrine of contra non valentum was correctly applied in this case and operated to suspend the running of prescription until plaintiffs obtained knowledge or information that a cause of action may exist against DHHR. Plaintiffs were put on notice only from the time of Bilich's third party demand against DHHR. Therefore, I conclude that plaintiffs' action against DHHR did not prescribe.

IMMUNITY
DHHR next argues the trial judge erred in finding liability against it under LSA-R.S. 9:2798.1 which states, in pertinent part:
"... B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
... (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."
The trial judge stated in his reasons for judgment that DHHR was not entitled to immunity in this case because it had failed to aggressively warn the general public about this bacteria. DHHR argues, on appeal, the trial court erred in holding it liable under LSA-R.S. 9:2798.1 by finding that DHHR's duty to warn of the vibrio vulnificus bacteria was not discretionary within the meaning of Section B of that statute.
Whether or not this duty to warn was discretionary is irrelevant because DHHR's failure to warn the public of the knowledge it possessed regarding the serious dangers of this bacteria falls within the exception to the immunity provision specified in R.S. 9:2798.1(C)2. I note that in the case of Winstead v. Ed's Live Catfish and Seafood, Inc., 554 So.2d 1237 (La.App. 1st Cir. 1989); writ denied at 558 So.2d 570 (La. 1990) which also involved vibrio vulnificus induced septicemia caused by the consumption of raw oysters, the First Circuit Court of Appeal held that DHHR's failure to warn the general public did not constitute the gross misconduct contemplated by LSA-R.S. 9:2798.1. That court found that DHHR did exercise its discretionary power to warn those at risk by notifying physicians through the August 1982 morbidity report.
I respectfully disagree with the holding of our brethren on the First Circuit. I find that DHHR's failure to warn the general public of the vibrio vulnificus bacteria in raw oysters which can and has caused serious injuries and death was a serious dereliction of its duty to protect the public health and safety. Testimony established that, of the fourteen known cases in Louisiana of vibrio vulnificus induced septicemia caused by eating raw oysters between 1977 *86 and 1985, ten of those cases resulted in death. The State knew that deaths continued to result from this bacteria after the issuance of the 1982 report and still did not issue a strong warning to the general public. I find that this failure to adequately warn constitutes the type of gross misconduct contemplated by LSA-R.S. 9:2798.1C(2).
It is clear that nothing prevented the State from issuing a general warning to the public about the dangers of the vibrio vulnificus bacteria. As a matter of historical fact, according to the testimony, such a warning was issued during the 1978 vibrio cholera outbreak which presented less severe consequences than the vibrio vulnificus bacteria. Because more deaths occurred after 1982 (the year that the morbidity report was issued to the medical community) in Louisiana from vibrio vulnificus bacteria contracted from raw oysters, the State knew or should have known that a warning to the general public was necessary. Indeed, the general public including restaurants and oyster suppliers continued to be unaware of the possibility of the extreme danger posed by the consumption of raw oysters by people with certain underlying physical conditions.
As a matter of public policy, courts cannot allow an abdication of the State's responsibility to disseminate information to the public of impending dangers from infectious diseases where the State has such knowledge. Accordingly, I find the trial judge correctly found DHHR to be liable to plaintiffs under the exception to immunity set forth in R.S. 9:2798.1 because of DHHR's failure to warn the general public about this potentially deadly bacteria.
Furthermore, the evidence in this case strongly supports a finding of liability against DHHR under the standard duty/ risk analysis. In Mart v. Hill, 505 So.2d 1120 (La.1987), the Louisiana Supreme Court stated that under a duty/risk analysis, the following four inquiries must be answered in the affirmative before plaintiff can recover under a negligence theory:
1. Was the conduct in question a cause-in-fact of the resulting harm?
2. What, if any, duties were owed by the respective parties?
3. Were the requisite duties breached?
4. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?
I note that the First Circuit in Winstead v. Ed's Live Catfish & Seafood, Inc., supra, concluded that DHHR's failure to warn the general public of this bacteria was not a cause-in-fact of that plaintiff's injuries because that plaintiff did not know he had any of the underlying risk factors and had previously eaten raw oysters with no ill effects. Therefore, the court reasoned that a warning to that plaintiff about this bacteria would have been futile.
In our case, the State possessed information as early as 1982 that showed the consumption of raw oysters could lead to serious injuries and/or death in certain individuals. The fact that this bacteria has only affected a very small number of people did not excuse the State from issuing warnings to the general public about the dangers of eating raw oysters. This is especially true in light of the fact that this bacteria has been fatal for most people who have contracted the disease associated with it.
In light of these facts, I find that DHHR's failure to warn the general public of the possible dangers of eating raw oysters was a cause-in-fact of decedent's injuries and death. One cannot assume, as DHHR argues, that this decedent would not have heeded a warning if one were given.
Considering DHHR's knowledge about the extreme danger of this bacteria and its position of public trust, I find that DHHR owed a duty to the general public to adequately warn of the possibility of contracting a deadly disease by eating raw oysters. A warning to the medical community absent a concurrent warning to suppliers and retailers of oysters as well as the general public was not sufficient. The fact that a few interviews were given by the State in 1985 at the request of the media did not satisfy the State's obligation to vigorously warn the general public of a disease which it knew could be fatal and which could be *87 avoided by not eating raw oysters. Under these circumstances, I conclude that the first three requirements for the application of duty/risk have been met.
Regarding the fourth requirement of duty/risk analysis, the risk unknowingly taken by decedent and the harm caused were within the scope of protection afforded by the DHHR's duty to warn in this case. Indeed, an adequate warning to the general public could have averted the tragedy in this case. Based on these reasons, I find that the evidence in this case clearly supports a finding of liability against DHHR based on a duty/risk analysis enunciated in Mart v. Hill, supra.
For the foregoing reasons, I dissent from the majority decree exonerating DHHR.