477 So.2d 1136 (1985)
Nancy R. WALKER
v.
MAYBELLINE CO.
No. 84 CA 0225.
Court of Appeal of Louisiana, First Circuit.
October 8, 1985.
Rehearing Denied November 21, 1985.
*1137 R. Bruce Macmurdo, and Walker P. Macmurdo, Percy, Macmurdo & Eaton, Baton Rouge, Victor L. Marcello, Talbot, Sotile, Carmouche, Marchand & Marcello, Donaldsonville, for plaintiff-appellee Nancy R. Walker.
*1138 G. Thomas Arbour, and T. Barry Wilkinson, Glusman, Moore, Wilkinson, Arbour, Broyles & Glusman, Baton Rouge, Henry B. Alsobrook, Jr., New Orleans, for defendant-appellant Maybelline Co.
Robert J. Vandaworker, Baton Rouge, for Liberty Mutual Ins. Co.
Robert Leake, Jr., New Orleans, for amicus curiae Cosmetic, Toiletry & Fragrance Assoc.
Dermot McGlinchey, Ernest Gieger, Jr., and Michael Noonan, New Orleans, for amicus curiae Product Liability Advisory Council & Motor Vehicle Mfg. Assoc.
Before WATKINS, CRAIN and ALFORD, JJ.
WATKINS, Judge.
Nancy Walker sues for personal injuries sustained by her in accidentally scratching her eye with a Maybelline mascara applicator brush manufactured by Maybelline Co. defendant, and the allegedly resultant loss of sight in her left eye. Maybelline defended based on the alleged sufficiency of warning and the alleged contributory negligence of Ms. Walker. The trial court awarded judgment in favor of Ms. Walker in the sum of $426,584.35, with an award to intervenor Liberty Mutual Insurance Company, worker's compensation insurer of Ms. Walker's employer, with whom Ms. Walker had entered into a settlement, in the sum of $20,577.95. From this judgment, Maybelline has appealed and Ms. Walker has answered the appeal, seeking an increase in quantum and also attorney's fees. Liberty Mutual has filed a brief, reserving its rights in the judgment. We affirm the judgment of the trial court.
On the morning of July 27, 1978, Ms. Walker arrived at work at a construction site without having applied her makeup. She worked as a secretary in a trailer used as a portable office. She removed a tube of Maybelline mascara from a vanity cabinet and proceeded to apply Maybelline mascara with a Maybelline brush. She had had the tube since December, 1977. In the process of applying the mascara, she scratched the epithelium of the cornea of the left eye with the mascara brush. She began to work, and felt a gradually increasing pain in the left eye. Finally, in the afternoon, she saw her employer's company nurse, who washed the eye and suggested if the condition grew worse she might consult a physician. Ms. Walker left work early, and returned to her home in Baton Rouge. She felt increasing pain in the eye throughout the night, and covered the eye with a wet washrag to ease the pain. In the morning, she went to the emergency room of Our Lady of the Lake Hospital and saw the emergency room physician, Dr. Berthelot. Dr. Berthelot applied a salve and suggested Mrs. Walker see an ophthalmologist. The salve temporarily alleviated the redness of the eye and the pain and Ms. Walker concluded the problem had been solved. She had the day, Friday, off, as the employer worked a four day week. She returned home, and gradually the eye became worse after showing considerable improvement. On Monday morning, Ms. Walker returned to the emergency room, and the doctor said she should see the recommended ophthalmologist, which she did. The ophthalmologist said she would probably lose the eye, and hospitalized her. The condition was found to have been caused by pseudomonas bacteria, which ate away the cornea and caused an ulcer to form thereon. Ms. Walker was taken to New Orleans, where she was treated by Dr. Kaufman, a renowned ophthalmologist. She underwent three corneal transplants, all of which were rejected, and several other operations on her left eye. She now can see objects at a distance of two feet with her left eye, and nothing else. The left eye places her in constant pain and would be removed were it not for the fact there is a dormant infection behind Ms. Walker's right eye (totally unconnected with the accident) which doctors fear might flare up if the left eye were to be removed.
The manufacturer of a drug that has harmful side effects is required to give notice of the side effects if it either knows of the side effects or should have known of *1139 the side effects. Miller v. Upjohn, 465 So.2d 42 (La.App. 1st Cir.1984), writ denied, 467 So.2d 533 (1985). As we remarked in that case, it is at the point of notice that strict liability and negligence in the field of products liability meet. In strict liability, as well as in negligence, the manufacturer must either know of the hazard or such hazard must have been duly knowable by the manufacturer for it to be charged with failure to give adequate warning.[1] With regard to the present case, which concerns a cosmetic product rather than a drug, the principles enunciated in Miller, supra are fully applicable.
The facts of the present case show that Maybelline in 1977 had sponsored a seminar at which Dr. Lou Wilson, a renowned ophthalmologist, and Dr. Donald Ahearn, a renowned microbiologist, lectured on the dangers of the use of mascara and its role in causing pseudomonas infection where the eye was scratched by the brush applicator. Maybelline furnished each of the two lecturers an honorarium and invited reporters from the leading ladies' beauty magazines to attend the lecture. Thus, it cannot be contended that Maybelline was unaware of the danger of pseudomonas infection. The record reveals that pseudomonas creates an enzyme which eats away the eye tissue quite rapidly. Thus, the dangerous propensities of a mascara brush scratch were well known to Maybelline at the time the product was sold.
Adequate notice must be given of the hazardous nature of a manufacturer's product. Chappuis v. Sears Roebuck & Co., 358 So.2d 926 (La.1978); Andries v. General Motors Corp., 444 So.2d 1180 (La. 1984); Harris v. Atlanta Stove Works, Inc., 428 So.2d 1040 (La.App. 1st Cir.1983), writ denied, 434 So.2d 1106 (1983). The question of adequacy of notice appears to be a question of fact, determinable by the trier of fact. Andries, supra. See also Harris, supra. In the present case, the Maybelline mascara tube was placed on a "blister card", a cardboard attached to the mascara tube at the time of purchase which contained printed instructions for use of the mascara. Amid a long list of instructions on the use of the product, which was placed on the reverse side of the card, was the following which stated: "NOTE: In case of eye irritations, infections, or scratches do not use this or any eye cosmetic. Consult a physician at once." The trial court found this warning inadequate, as it failed to state that an ophthalmologist should be consulted, when, had Ms. Walker consulted an ophthalmologist Friday, she probably would have prevented pseudomonas infection. The emergency room physician, who was not an ophthalmologist and was not called to testify, appears to have been unaware of the dangers of pseudomonas infection. We cannot say the trial court was clearly wrong in its finding the notice was inadequate. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The warning was buried in a list of instructions with nothing to call it to the attention of the purchaser. Moreover, it started with the word "Note", which would not call the reader's attention to the grave nature of the threat. Furthermore, no mention was made of the danger of pseudomonas infection or of eye infection with possible resultant loss of eyesight. Thus, we cannot find the trial court clearly wrong in holding the warning inadequate.
Maybelline, contends, however, that Ms. Walker testified she would not have read the warning had she seen it. We find, as apparently the trial court did, these isolated comments by her to have been purely speculative. The blister card had been changed to add the warning in the summer of 1977. Printing and distribution of the new blister card required some time. There is nothing to show that the blister card attached to the tube of mascara that Ms. Walker purchased contained any warning at all. Furthermore, Maybelline seeks to fault Ms. Walker for its own failure to make the warning more apparent to the *1140 purchaser. Placing the warning with the word "Note" in a list of instructions may be calculated to have the least possible impact upon the successful sale of the product; it is scarcely likely to have sufficient impact as a warning of possible loss of eyesight through pseudomonas infection.
However, Maybelline contends that Ms. Walker was contributorily negligent in failing to have consulted an ophthalmologist sooner and in scratching her eye in the first place. We find no error in the trial court's determination that Ms. Walker was not negligent. As to the scratching of the eye, we see that the testimony reveals scratching one's eye with a mascara brush is a fairly common occurrence, one for which Ms. Walker should not be held to blame. Furthermore, Maybelline has only itself to blame for the failure of Ms. Walker to be aware of the grave possibility of pseudomonas infection, as it failed to give adequate notice. (We note that contributory negligence is no longer a defense in products liability cases. Rather, the proper defense under the Civilian system has always been comparative negligence. Bell v. Jet Wheel Blast, Division of Ervin Industries, 462 So.2d 166 (La. 1985).)
Ms. Walker will probably never again see out of the left eye. Her appearance is disfigured. She is in constant pain. It is possible she will lose the sight of the other eye. Her job at the construction site ended (not as a result of the eye infection) and because of the eye injury she was forced to take a job at a reduced rate of pay. We therefore hold the award of the trial court was fully justified, which was as follows:
"Thus, Nancy Walker is entitled to recover in the amount of $426,584.35 from Maybelline, itemized as follows:

Past Medical Expenses $ 37,434.35
Future Medical Expenses $ 25,000.00
Permanent Disfigurement $ 50,000.00
Past pain and suffering $150,000.00
Future pain and suffering $100,000.00
Loss of earning capacity $ 63,000.00
Expert Witness Fees $ 1,150.00
 ___________
Total: $426,584.35"

Lastly, we must consider the question of attorney's fees which were not awarded by the trial court and are now sought by the plaintiff on appeal.
Facts which give rise to a products liability suit can contain elements of both tort and redhibition as shown in the case relied on by the plaintiff, Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981) (on rehearing). In that case, the Supreme Court, on rehearing, affirmed the award of attorney's fees by the appellate court, reversing its original position denying such an award. The standard of conduct in Philippe, supra, was based upon the codal articles dealing with sales and therefore, the awarding of attorney's fees was founded in redhibition, namely LSA-C.C. art. 2545.[2]
Here, the liability of Maybelline is predicated not upon redhibition but tort through LSA-C.C. art. 2315. We note that the present case is not one in which the product was improperly designed or manufactured making it unfit for its intended use as was the shotgun shown to be defective in Philippe, supra. Rather, the mascara involved here was a satisfactory product with the only flaw being its lack of an adequate warning of a dangerous propensity known to the manufacturer.
Although the dividing line is somewhat unclear as to which products liability cases an award of attorney's fees would be justified, it is the opinion of this Court that such an award is improper where liability is based upon the manufacturer's breach of its duty to provide adequate warnings as in this case. Thus, the denial by the trial court of attorney's fees to the plaintiff is affirmed.
*1141 For the foregoing reasons, the judgment of the trial court is affirmed. All costs shall be paid by the Maybelline Co.
AFFIRMED.
CRAIN, Judge, concurring.
Neither the Maybelline eyebrush nor the mascara it was used to apply were defective in manufacture or design. They were manufactured according to the design and the design accomplished exactly what was intended, the application of mascara make up to the eye. Neither was the result here so widespread and predictable that it was unreasonably dangerous to ordinary use and thus defective. However, there is a dangerous propensity to both the mascara and the brush. The mascara (any mascara) tends to breed pseudomonas bacteria and the brush will tend to scratch the cornea if brushed over it. Consequently, the combined use of brush and mascara have a dangerous propensity to cause pseudomonas infection of the cornea, not a defect. Maybelline knew of the dangerous propensity, holding seminars on the subject in 1977. Consequently, Maybelline had a duty to warn. The question in this case should be whether Maybelline breached that duty and if so whether the breach was a cause in fact of the resulting damage. There is evidence which supports the conclusions of the trial court in this respect. Additionally, the complete failure to attach a warning to the particular mascara used by the plaintiff, or the total inadequacy of the warning if there was one, precludes contributory negligence on her part.
By continuing to apply knowledge analysis to strict liability cases when dealing with so called "marketing defects" we are diluting strict liability concepts. Since under Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985) we cannot even be sure of the applicability of comparative negligence in all strict liability cases (although it is always applicable in negligence cases)[1] we are going to reach cases involving a manufacturer's duty to warn where the just result would be to compare fault, and not be able to do so.
Additionally, by failing to distinguish between defects and dangerous propensities, the latter which should be treated solely on negligence concepts, we have dug ourselves into a hole on attorney fees. Under La.C.C. art. 2545 a manufacturer is liable for attorney fees for damages inflicted by a defective product which it has sold, even though the suit for damages is a tort action. Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981). Here we deny attorney fees because of what is perceived as a distinction between the defect of a failure to warn, and manufacturers' or design defect. I agree that attorney fees should not be awarded and that it would be a completely unjust and almost incomprehensible straining of the law to do so. However, a defect is a defect is a defect. The fact of the matter is there is no defect, and we shouldn't call it one. We should be dealing strictly in negligence concepts where attorney fees are not permitted.
I concur.
NOTES
[1] See astute analysis of Judge Crain, in concurring opinion in Miller v. Upjohn, supra.
[2] Civil Code article 2545 states:

The seller who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages.
[1] See, however, concurring opinion Justice Dennis, Drum v. U.S.F. & G., 462 So.2d 1241 (La. 1985) Supreme Court Docket No. 84-C-0911 and 84-C-1405, where indications now are that the court decides when contributory negligence and consequently comparative negligence apply, and this decision rests not solely on what is just, but what deters accidents, spreads costs, and reduces costs. The traditional appellate court function of establishing rules where lawyers and litigants can predict what will occur given a set of facts might just be a thing of the past. We seem to be drifting into what is solely the legislative arena and the constitutionality of this drift must surely be suspect.