630 So.2d 809 (1993)
Earl H. HINES, Jr. and Beverly Helms Hines, Plaintiffs-Appellants,
v.
REMINGTON ARMS COMPANY, INC., and Sinclair, Inc., Defendants-Appellees.
No. 92-941.
Court of Appeal of Louisiana, Third Circuit.
November 3, 1993.
Opinion Amending Decree on Rehearing January 25, 1994.
*812 Louis D. Bufkin, Lake Charles, Jennifer J. Bercier, J.B. Jones Jr., Cameron, for Earl H. Hines Jr. etc.
John B. Scofield, Patrick Donavon Gallaugher Jr., Lake Charles, for Hodgon Powder Co.; Admiral Ins.
John Stanton Bradford, Jeanne Marie Sievert, Lake Charles, for State Farm.
Before LABORDE, THIBODEAUX, SAUNDERS and WOODARD, JJ., and CULPEPPER[*], J. Pro Tem.
THIBODEAUX, Judge.
This is a products liability case. Plaintiffs, Earl Hines, Jr. and his wife, Beverly, appeal a jury verdict in favor of defendants, Sinclair, Inc., Hodgdon Powder Company and Admiral Insurance Company. Mr. Hines was injured when his rifle accidentally fired into a gunpowder canister. The jury determined that Mr. Hines's bench rest target rifle, manufactured by Sinclair, and the gunpowder, manufactured by Hodgdon, were not defective, and relieved defendants of any responsibility. For the following reasons, we reverse the jury verdict and the trial court's decision to exclude evidence on failure to warn. We render judgment for Earl and Beverly Hines against all defendants and award damages and attorney's fees.

ISSUES
We shall consider the following issues raised by the plaintiffs' appeal:
1) Whether the jury was manifestly erroneous in finding the Sinclair rifle was not defective.
2) Whether the trial judge erred in refusing to charge the jury on the alleged negligence of Sinclair and Hodgdon.
3) Whether evidence that Hodgdon failed to warn, or inadequately warned, users of the dangerous characteristics of its product was erroneously excluded by the trial judge.
4) Whether the jury was manifestly erroneous in failing to find that the Hodgdon powder was unreasonably dangerous in design.
5) Whether the trial judge erred in not excluding evidence of plaintiff fault.
Hodgdon and Admiral also appeal and raise these issues:
1) Whether their third party demand against Sinclair should be recognized.
2) Whether the action against them has prescribed.

FACTS
On February 29, 1984, while Earl Hines was seated at his loading bench, his new Sinclair accurized bench rest target rifle rested on the bench top and pointed at the wall against which the bench was pushed. Along the back of the bench were several canisters of gunpowder. The barrel of the rifle was six to eight inches from a cardboard canister of H4895 Hodgdon powder.
Mr. Hines was testing the fit of a cartridge in the rifle's chamber. He inserted a live cartridge into the breech, shifted the bolt forward into the chamber, closed the bolt, and the rifle fired. The gunpowder was somehow ignited and the room erupted into flames. He managed to escape by crawling over the room's only door, which had been blown off its frame.
The incident left him badly burned and his necessary stay in the hospital led to further complications, all of which resulted in permanent injury. He suffered severe property damage as well. As a result, the Hineses *813 brought suit against Sinclair, Inc. and later amended their suit to add Hodgdon Powder Company, Inc. and Admiral Insurance Company, Hodgdon's insurer. Remington Arms Company, Inc. was also a named defendant but was dismissed on summary judgment. See, Hines v. Remington Arms Company, Inc., 522 So.2d 152 (La.App. 3d Cir.), writ denied, 524 So.2d 522 (La.1988). Sinclair did not answer the petition or appear at trial to defend against the claim. After the jury verdict in defendants' favor, this appeal followed.

ANALYSIS

Issue One
The Hineses contend the jury was clearly wrong in finding the Sinclair rifle not defective. Specifically, they argue that the rifle's trigger mechanism has a propensity to "follow down fire," which makes it unreasonably dangerous, that the evidence more than proved this defect and that the jury ignored the clear, objective proof.
It is well established law that questions of fact are the province of the jury. Its factual conclusions are entitled to great deference. However, if an appellate court finds objective evidence to the contrary, after a complete review of the record, jury conclusions may be overturned. Stobart v. State Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). Therefore, it is incumbent upon this court to review the entire record before us to determine if the jury was clearly wrong in finding no defect.
The rifle involved in the accident is a duplicate of one Mr. Hines purchased from Sinclair three years prior to the accident. After firing approximately two thousand rounds from the first, he decided to buy the second. Both were purchased exclusively for competition target shooting.
The Sinclair rifle is an amalgam of parts from various other manufacturers that are assembled and modified by Fred Sinclair, the company's owner, for maximum accuracy in bench rest shooting. Significant modifications are the lack of a trigger safety and the extremely sensitive trigger pull. The purpose of the sensitive trigger pull is to reduce the tension required to fire the rifle, which in turn reduces the movement of the gun when the trigger is pulled and increases the precision of the shot. Whereas a hunting rifle, for example, could have a trigger pull from four to six pounds, the Sinclair rifle used by Mr. Hines had a pull of only two ounces.
The trigger used on the rifle was known as a "Burns" trigger. Apparently, it was very popular. Sinclair testified that:
"Everybody wanted a Burns trigger. One of the reasons you wanted a Burns trigger is because it was light, and it was safe, and it was reliable, and it was just at that time the best trigger going ...
* * * * * *
It [has] the proper pull, it is a safe trigger, it is reliable and lasts forever."
The trigger's sensitivity is the subject of the defect claim. The Hineses contend that the Sinclair rifle trigger mechanism was unreasonably dangeroustherefore defective because it "follow down fired." "Follow down firing" occurs when a cartridge is discharged merely by shifting it into the chamber and without the trigger being pulled. The defect was initially argued as one in either construction or design, which it may or may not be. Nevertheless, it is unnecessary to discuss those possibilities as we hold that the Sinclair rifle is unreasonably dangerous per se.
This incident took place before the enactment of the Louisiana Products Liability Act. Accordingly, we look to products liability law prior to the act, starting with Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986).
In Halphen, the court examined the theories of recovery in products liability claims and set forth elements that must be proven under each theory. Foremost was the court's recognition of a theory based on products classified as "unreasonably dangerous per se." The court defined "unreasonably dangerous per se" as such:
"A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product, *814 whether foreseeable or not, outweighs the utility of the product." (Footnote omitted). Id. at 114.
The court stated that the purpose of the theory is to evaluate the product, utilizing the danger-utility test, without regard to the manufacturer's knowledge or perceptions of the possible dangers of the product.
The danger-utility test, or risk-utility test as it is otherwise known, requires a "weighing of the danger-in-fact of a product to society as a whole against the utility of the product to society as a whole." Sharkey v. Sterling Drug, Inc., 600 So.2d 701, 707 (La. App. 1st Cir.), writ denied, 605 So.2d 1099, 1100 (La.1992). The test is not limited to a particular subclass of consumer or user. Sharkey, supra; see also, Brown v. Sears, Roebuck and Company, 516 So.2d 1154 (La. 1988). As applied to the present case, we must look beyond those persons generally involved in the sport of target shooting and weigh the benefits and negatives of the Sinclair rifle as it affects society as a whole.
Under the danger-utility test, the danger posed by the Sinclair rifle is quite obvious. Both sides agree that, because of the sensitive trigger pulls, some target rifles are subject to accidental discharges, either by "follow down firing" or by simply jarring or jostling them. Defense experts testified that these hazards are commonly known among those who compete in bench rest competitions. In fact, concern for safety at competitions is so great that stringent rules require the rifle bolts be removed until it is time to actually fire at the target. Failure to comply results in instant disqualification. Such caution by experienced rifle users underscores the inherent danger in bench rest rifles.
There is no need to belabor the point that all firearms can be dangerous and have the potential to cause great harm. However, that potential does not make all firearms unreasonably dangerous per se. Nevertheless, a rifle with a firing mechanism so sensitive that it has a propensity to fire accidentally, coupled with the lack of a safety mechanism, makes that rifle highly dangerous to society as a whole.
As far as its utility in society, we are not convinced it outweighs the danger. The evidence established that target rifles are used only for competition. They are not used for hunting, so they do not provide food. They are not used for protection, so they do not provide security. While we recognize the value of rifles with sensitive triggers to the competitive shooter, that value does not extend to society in general. The danger that an accidental discharge might injure or kill someone is far superior to any benefit society might derive from a sensitive trigger pull. Consequently, we hold that the Sinclair rifle is unreasonably dangerous per se.
The jury found no defect in the rifle. On its face it would seem our ruling reverses a finding of fact. Belying this appearance, however, is the law which generated our holding. Products liability law is difficult for those trained to understand its intricacies and it must appear extremely complex to the layman. When the law was applied to the objective evidence, it clearly established that the Sinclair rifle was unreasonably dangerous per se. This court is not substituting its own findings for those of the jury. Rather, our conclusion is the only conclusion that could be reached when the law and evidence are looked at as a whole. Therefore, while it appears the jury ignored the evidence presented, we believe the true error to be a misapplication of the law provided.

Issue Two
The second issue concerns an alleged error on the part of the trial judge in failing to charge the jury on the negligence of both Sinclair and Hodgdon. We have reversed the jury decision in favor of Sinclair, rendering this issue moot as to it. Likewise, we will grant the Hineses relief against Hodgdon on other grounds, making it unnecessary to address this issue.

Issue Three

A. Exclusion of Evidence
This issue concerns the trial court's evidentiary ruling that excluded all evidence pertaining to a "failure to warn" cause of action against Hodgdon. The Hineses alleged in their first supplemental and amending petition that, among other things, Hodgdon *815 was responsible for the injuries to them by virtue of its failure to warn of the dangers inherent in its gunpowder. In 1989, Hodgdon and Admiral filed a motion for partial summary judgment on that issue. The judge presiding over the hearing converted the summary judgment to a motion in limine, ruled in favor of Hodgdon, and prohibited the presentation of any evidence or testimony before the jury concerning the manufacturer's failure to warn. The Hines's application for writs was denied.
In 1991, the Hineses filed a motion to set aside the trial court's earlier ruling and reopen the issue of failure to warn. After a hearing, this time before the trial judge, the motion was dismissed. The trial judge concluded that Hodgdon had no duty to warn, as Mr. Hines was a sophisticated user who, by his own admission, was aware of the dangers that might arise from firing a rifle into a canister of gunpowder. Counsel for Mr. and Mrs. Hines conceded that a duty to warn under that scenario did not exist, but argued, instead, that Hodgdon breached a duty to adequately instruct users regarding safe and proper storage. The trial judge was not persuaded.
The argument rejected by the trial judge was that Hodgdon knew of, and recommended, a proper method of storing its powder but failed to make this method known to its users. At the time of the accident, Hodgdon published a manual which suggested storing its powder in a wooden box, known as a "powder magazine." This manual was available by request at a cost of $25.00. The label on the canisters of powder made no reference to proper storage methods, nor did it inform the user of the existence of the manual or the instructions therein.
The Hineses introduced evidence of Hodgdon's alleged failure to warn as an offer of proof, outside the presence of the jury. They argue now that they were wrongfully denied the right to present their primary case against Hodgdon because of the exclusion of this evidence. We agree.
The standard of review of evidentiary rulings is "abuse of discretion." Citizens Bank and Trust v. Consolidated Terminal Warehouse, Inc., 460 So.2d 663 (La.App. 1st Cir.1984). The trial judge excluded the evidence because he found no duty to warn Mr. Hines and, also, under LSA-C.E. art. 403, the prejudicial effect of the evidence far exceeded its probative value because it had the potential to confuse and mislead the jury.
Hodgdon, as manufacturer of the gunpowder, has a duty to warn of dangers inherent in the normal use of the product which are not obvious or known to the ordinary user. Winterrowd v. The Travelers Indemnity Co., 462 So.2d 639 (La.1985); Halphen, supra. This includes providing instructions to prevent the misuse of its product. Brumley v. Firestone Tire & Rubber Co., 459 So.2d 572 (La.App. 3d Cir.), writ denied, 462 So.2d 1267 (La.1984). For the warning or instruction to be adequate, it must be expressed with an intensity proportionate to the danger inherent in the product. Ducote v. Liberty Mutual Insurance Co., 451 So.2d 1211 (La.App. 4th Cir.), writ denied, 457 So.2d 15 (La.1984). Our examination of the record reveals that Hodgdon's warnings were not manifested with sufficient clarity to instruct Hines of the dangers involved and the need to exercise more prudent use of the sensitive instrument. See, e.g., Bloxom v. Bloxom, 512 So.2d 839 (La.1987).
There is no duty to warn a user of a danger that is obvious or of common knowledge. Neither is there a duty to warn a user, sometimes defined as a "sophisticated user," who, through his familiarity with the product, is presumed to know its dangers. Whitacre v. Halo Optical Products, Inc., 501 So.2d 994 (La.App.2d Cir.1987); Ducote, supra; Winterrowd, supra. Hodgdon argues that Mr. Hines is a "sophisticated user" of guns, with enough experience to certainly contemplate the ramifications of firing a rifle into a canister of gunpowder. It argues that the canister labels sufficiently warned of the flammable nature of the product and, furthermore, the product did not react in a way that was unexpected considering the circumstances.
This argument misses the point of the claim. The Hineses sought to prove that Hodgdon knew of a safe method of storing gunpowdera method not common knowledge *816 among users of the productand failed to sufficiently convey this method to its users. The trial judge misconstrued the import of this theory.
In failure to warn cases, there must be a reasonable relationship between the omission of the warning and the injury suffered by plaintiff. Gauthier v. McDonough Power Equipment, Inc., 608 So.2d 1086 (La.App. 3d Cir.1992). Mr. and Mrs. Hines offered evidence of the following: (1) that Hodgdon was aware of a safe storage method for its gunpowder; (2) that this method was not obvious or generally known; (3) that Mr. Hines was not aware of this method; (4) that Hodgdon did not make the information readily available; and, (5) that had Mr. Hines been made aware of the storage method, the injuries he suffered might never have occurred.
The foregoing evidence was sufficient to establish both a duty by Hodgdon and a reasonable relationship between the lack of warning and the injury suffered. The trial judge abused his discretion by excluding the evidence and depriving the Hineses an opportunity to have the jury decide the outcome. It is incumbent upon the appellate court to grant relief where the trial court's abuse of discretion substantially impairs the rights of a party. Guillory v. Guillory, 602 So.2d 769 (La.App. 3d Cir.1992). For that reason, we reverse.

B. De Novo Review
Where the trial judge makes a consequential error in excluding evidence, the judgment of the trial court should be given no weight. We must, after an independent review of the record inclusive of the excluded evidence, determine the outcome of this case. McLean v. Hunter, 495 So.2d 1298 (La.1986).
The evidence established that it was a Hodgdon powder canister into which Mr. Hines accidentally fired. Defendants did not mount any serious challenge to that contention and, in fact, its own experts indicated that the results would have been much worse had Mr. Hines fired into metal containers holding the powder of other manufacturers. Thus, we turn to the issue of failure to adequately warn.
The focus of the failure to warn evidence was Hodgdon's duty to instruct users in the method of correct and safe storage of its gunpowder. At the time of the accident, the label on a canister of H4895 stated: "Store in Cool, Dry Place." Additionally, Hodgdon produced a manual containing specifications for reloading cartridges. This manual instructed that its powder should be stored in a wooden cabinet, and gave instructions on how to build it. The manual was available at a cost of $25.00. Subsequent to the accident, the canister label was changed to say:
"Read safe usage and storage instructions in our FREE BOOKLET or in our complete DATA MANUAL available from ... HODGDON POWDER COMPANY."
Obviously, Hodgdon found it necessary to inform its users of safe storage instructions as it substantially changed its warning and made the instructions available for free.[1] By doing so, it showed its knowledge of the need for safe storage instructions and it demonstrated the ease and cost effectiveness of supplying such information.
Hodgdon knew of the potential dangers of improper storage or it would never have bothered to provide any instructions. However, it did not adequately convey these instructions to its users, by either direct warning on the label of the canisters or by reference to proper storage instructions, as it did subsequent to the accident.
Mr. Hines did not know and could not have been expected to know the dangers of storing powder in the fashion in which he did. He had seen powder stored in that manner before. Indeed, if he had looked in the Hodgdon manual containing the original storage instructions, he might have seen the picture of a reloading bench with gunpowder stacked along one side in a fashion similar to the way his was.
Mr. Hines owned the Hodgdon manual at the time of the accident but did not use it. It *817 contained no reloading specifications for the cartridges he used. The very fact that he had the manual did not suffice as warning, as there was nothing on the canister or the manual to draw his attention to the need for instructions on safe storage. Moreover, the manual, given the picture of the reloading bench, at best provided conflicting information.
Hodgdon had knowledge of the dangers inherent in the improper storage of its powder yet failed to provide a warning sufficient to relay the information to consumers. Mr. Hines was unaware of the proper storage methods and these methods were not obvious to the general user. Had Mr. Hines stored the Hodgdon powder in a wooden box, the results of the accidental firing of the Sinclair rifle would have been much less severe, if they would have occurred at all. Consequently, we find that Hodgdon is at least partially liable for plaintiffs' damages.

Issues Four and Five
It is not necessary that we address these issues as our decision on Issues One and Three is dispositive of the case.

Allocation of Fault
As we have found both Sinclair and Hodgdon liable, we turn to the task of expressing liability in percentages of fault. The Hineses urge that we should not apply comparative fault, under the reasons articulated in Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985). The court in Bell refused to apply contributory negligence principles to plaintiff's recovery in a products liability case. In that case, plaintiff was injured while performing the methodical and monotonous job he was instructed to do. The court reasoned that reducing his recovery would not provide an incentive to future users of the product to do so in a safe and careful manner nor would it encourage manufacturers to make safer products.
This case is distinguishable. Applying comparative fault in this instance may in fact promote the safe and proper use of firearms and gunpowder. Unlike the plaintiff in Bell, Mr. Hines's involvement in the accident stems from his recreational interest. His use of the target rifle was not required or even regulated. By holding him responsible for his negligent actions, we may remind other firearm users of the potential danger such weapons present.
Mr. Hines's fault exists primarily in the way in which he chose to test his new Sinclair rifle. The fact that he loaded a target rifle with a live cartridge, in his home, with the barrel six to eight inches from several canisters of gunpowder shows a general disregard for his own safety and the safety of others. We are persuaded by his argument that he had no expectation that the rifle would "follow down fire." We also believe that he was unaware of a safer method of storing the powder. Nevertheless, it was suggested to him by Fred Sinclair that he try a "dummy round," or a non-firing cartridge, when testing the size of the rifle chamber. His failure to heed this advice, combined with the manner and venue chosen to test the rifle, makes him partially responsible for his own injuries. We assess his fault at thirty four percent.
The Sinclair rifle has the highly dangerous propensity to accidentally discharge, which makes it unreasonably dangerous per se. It was a very significant cause of Mr. Hines's injuries. We assess Sinclair's fault at thirty three percent.
Finally, Hodgdon is thirty three percent at fault for its failure to adequately warn. Had it provided sufficient storage instructions, Mr. Hines's injuries may have been less severe, if not prevented altogether.

Damages
From the evidence we make the following damage awards:

I. Earl Hines, Jr.:
 Medicals....................... $ 322,450.45
 Property Loss.................. $ 135,678.47
 General Damages................ $2,000,000.00
 _____________
 TOTAL........................ $2,458,128.92
II. Beverly Hines
 Loss of Consortium............ $ 50,000.00
 TOTAL....................... $ 50,000.00

Hodgdon argues that much of the medical problems experienced by Mr. Hines were unrelated to his prolonged stay in the hospital. It claims that, if it is found liable for damages, liability is limited to those injuries *818 directly and specifically related to the accident.
Under a duty-risk analysis, Hodgdon's duty not to injure Mr. Hines includes the risk that he may experience further harm in the treatment process. Younger v. Marshall Industries, Inc., 618 So.2d 866 (La. 1993); Weber v. Charity Hospital of Louisiana, 475 So.2d 1047 (La.1985). The medical testimony establishes a causal connection between the injuries Mr. Hines suffered in the accident and the complications that arose in the hospital and after his release. The establishment of the causal relationship mandates that Hodgdon is liable for all related damages, including medical bills.
Regarding property damage, the record displays the exact amount paid to the Hineses by their insurer for property loss. This amount is an accurate reflection of the damages and shall be awarded to plaintiffs, subject to the subrogation contract with the insurer.
We now turn to general damages. The record is replete with documentation of the excruciating physical and psychological pain Mr. Hines endured because of the accident. At the time of the accident, he was forty-seven and healthy. He was burned on over thirty percent of his body and left with debilitating physical and cosmetic deformities and nerve damage. He was hospitalized for approximately nine months.
While hospitalized for the burns, he suffered decubitus ulcersbed soresso severe that skin grafts were required to cover a broad area on his buttocks where the dead flesh and affected bone had been surgically removed because of their decayed status. The decubitus ulcer also affected nerves in the buttocks region and left him impotent. Because he is unable to control his bladder, he has to use a catheter to urinate. He is unable to walk without a cane or a walker and stays on medication for pain and infection.
Mr. Hines also suffered an injury to his neck which aggravated a degenerative disc disease and necessitated the fusion of neck vertebrae. Furthermore, he suffered a broken hip after being released from the hospital. The break ultimately required hip replacement surgery. The treating physician stated that the break was caused by a weakening of the bones, which is a common occurrence in burn victims who are confined to bed for a prolonged period.
There is ample evidence concerning the damaging psychological effects of the accident. It reveals that after the accident, Mr. Hines suffered from hallucinations, memory loss and bouts of severe depression.
It appears fairly certain that Mr. Hines will have to endure his severely diminished physical and psychological condition for the remainder of his life. According to the testimony of the medical experts, his debilitated status is unlikely to markedly improve.
An award of $2,000,000.00 in general damages is certainly reasonable for the extensive physical and mental injuries suffered by Earl Hines. The record convincingly supports such an award.

Loss Of Consortium Claim Of Beverly Hines
During the course of Mr. Hines's hospitalization, Beverly Hines spent most of her time with him in the intensive care unit and, according to Dr. Patricia Blakeney, a clinical psychologist, experienced heightened levels of anxiety and tiredness. Because of the confinement of her husband, she assumed all responsibility for the management of their personal and business affairs. To that extent, their roles were changed from that previously experienced by them. The assumption of additional duties and the reversal of roles exacerbate the tension felt by injured individuals and their spouses. The changed relationship is very difficult to deal with and Mrs. Hines was placed in the position of having to confront these problems.
Furthermore, a sexually dysfunctional relationship results. This was especially true for Mr. and Mrs. Hines in view of his impotence resulting from this brutally unfortunate accident. Given his impotent state, their sexual relationship was dramatically altered with a concomitant decrease in the frequency of sexual involvement.
*819 Moreover, Mrs. Hines testified that at least one of her hobbies, collecting antique glassware, had to be curtailed and her travel engagements with her family was significantly decreased.
In light of all of these considerations, an award of $50,000.00 for her loss of consortium is reasonable.

Attorney's Fees
The Hineses claim entitlement to attorney's fees under authority of LSA-C.C. art. 2545 and Philippe v. Browning Arms Co., 395 So.2d 310 (La.1981) and its progeny. We agree that Sinclair owes attorney's fees by virtue of its rifle being unreasonably dangerous per se. It is presumed to know the vice of its product, and the Hineses have suffered damages as a result of this vice. However, we decline the invitation to remand for evidence on the matter. This dispute is in its ninth year and we would be remiss in our duty to expedite justice if we allow further trial proceedings. Furthermore, the record sufficiently portrays the effort and time expended to bring this trial to its present disposition. Based on that fact, we hold Sinclair liable for attorney's fees in the amount of twenty-five percent of the total judgment against it.
We deny attorney's fees against Hodgdon. In doing so, we follow the rationale of Walker v. Maybelline Co., 477 So.2d 1136 (La.App. 1st Cir.1985), writ denied, 481 So.2d 1333 (La.1986), which distinguished cases where the product is defective in design or construction from those where the "defect" is a failure to warn. The court in Walker stated that the breach of duty was in the lack of adequate warning, not in some malfunction of the product; thus, the vice is not in the thing sold, as required for recovery under LSA-C.C. art. 2545. We recognize, as that court did, the fine distinction made, but believe it is the proper analysis of the issue. Consequently, no attorney's fees are awarded against Hodgdon or Admiral.

Interest Liability Of Admiral Insurance Company
Admiral Insurance Company issued a general liability policy to Hodgdon, Inc. The section, "Supplementary Payments," states in pertinent part:
The Company will pay, in addition to the applicable limit of liability:
(a) all expenses incurred by the Company, all costs taxed against the Insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon.
Thus, Admiral is further liable for legal interest on the entire amount of the judgments from the date of this court's judgment until it tenders or pays its policy limits of $500,000.00.

Hodgdon's Issues
Hodgdon answered the appeal and asserted two issues. In the first issue, it asks this court to recognize its third party demand for indemnity and contribution against Sinclair, if we reverse the judgment against it. This is not necessary. Sinclair and Hodgdon are liable in solido for the Hineses damages. Under LSA-C.C. art. 2324, as it existed at the time of the accident, and the jurisprudence interpreting it, the right to seek contribution and indemnity arises when joint tort-feasors are found liable in solido for damages to the plaintiff. There is no need for us to recognize its claim as it is already provided for by operation of law.
Hodgdon's second issue is a question of prescription. It claims the Hineses failed to file a timely suit against it and Admiral. While Hodgdon and Admiral were added to the suit by amending petition filed more than a year after the date of the accident, the action has not prescribed. Because suit was filed timely against Sinclair, it is timely as to Hodgdon and Admiral by virtue of their solidary liability. Younger, supra; Lee v. Missouri Pacific Railroad Co., 540 So.2d 287 (La.1989); LSA-C.C. art. 1799. This issue lacks merit.

*820 CONCLUSION
For the foregoing reasons, the jury verdict in favor of Sinclair, Inc. is reversed, the Sinclair rifle is unreasonably dangerous per se and Sinclair is found to be thirty three percent at fault for damages suffered by Earl & Beverly Hines.
The trial judge's evidentiary ruling is reversed and the jury verdict concerning Hodgdon and Admiral given no weight. Hodgdon failed to adequately instruct Mr. Hines of a safe and proper method of gunpowder storage. Hodgdon's fault is thirty three percent.
Earl Hines, Jr.'s fault is assessed at thirty four percent.
We award attorney's fees of twenty-five percent against Sinclair but none against Hodgdon or Admiral.

DECREE
For the reasons assigned, the judgment of the trial court is reversed and set aside. The following percentages of fault are set: Sinclair, Inc., thirty three percent; Hodgdon Powder Company, thirty three percent; and, Earl Hines, Jr., thirty four percent. Accordingly:
IT IS ORDERED that there be judgment in favor of plaintiff, Earl Hines, Jr., and against defendants, in the sum of $2,458,128.92, and for Beverly Hines and against defendants for the sum of $50,000.00 in the following fashion:
Sinclair, Inc., Hodgdon Powder Company and Admiral Insurance Company, are liable in solido for $500,000.00 plus legal interest from the date of judicial demand against Sinclair until the date of this decree;
Admiral Insurance Company is liable for legal interest on the entire amount of the judgment from the date of this decree until it tenders or pays its policy limits of $500,000.00;
Sinclair, Inc. and Hodgdon Powder Company are liable in solido for the principal amount over $500,000.00, plus legal interest on that amount, from the date of judicial demand on Sinclair until paid;
Sinclair, Inc. is liable for attorney's fees amounting to twenty-five percent of the total award; and
Sinclair, Inc., Hodgdon Powder Company and Admiral Insurance Company are liable in solido for all costs of this appeal.
IT IS FURTHER ORDERED that the total amount awarded to Earl Hines, Jr. and Beverly Hines be reduced according to Earl Hines's comparative fault of thirty four percent.
REVERSED AND RENDERED.
LABORDE, J., dissents and assigns reasons.
CULPEPPER, J., dissents for the reasons assigned by LABORDE.
LABORDE, Judge, dissenting.
Although Mr. Hines' plight evokes the sympathy of this court, that alone is not enough to justify a reversal of the trial court's decision. In my view, the majority goes to great lengths to detour around the clear mandates of the Canter-Arceneaux-Rosell-Stobart rule that appellate panels not lightly tread on a jury's factual conclusions, regardless of the personal predilections of its constituent members.
In the case sub judice, the trial judge properly instructed the finder of fact as to the legal duties of the defendants to this proceeding and as to plaintiff's legal burden of proof, raising the standard of appellate review to that of the quintessential question of fact. The jury, applying the law to the facts as it found them, absolved defendants of all liability. Although my heart is with the plaintiff, the law is not. Accordingly, I respectfully dissent. The evidence and law do not demonstrate that the trial court's finding was clearly wrong or manifestly erroneous on either factual or legal grounds.

STANDARD OF REVIEW
[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. *821 Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Housley v. Cerise, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
This court has recognized that "[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts." Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.

Stobart v. State Through DOTD, 617 So.2d 880, 882-883 (La.1993).

GUN MANUFACTURER
In the present case, the plaintiffs presented evidence suggesting the trigger mechanism in the gun was too light and prone to downfire. To rebut this evidence, the defendants presented evidence that the requirement of special handling techniques is universally recognized by competition shooters.
Based on the evidence introduced at trial plus the fact that plaintiff is a sophisticated user of this type of firearm, it was entirely reasonable for the jury to conclude that competition shooters like Earl Hines, the only persons who purchase and use these guns, are aware of this propensity and therefore are obliged to handle these guns accordingly.
The jury could also have concluded that it was plaintiff's actions, not defendant Sinclair's, that rendered the gun unsafe, as Fred Sinclair, the manufacturer of the gun, testified that the trigger of every accurized rifle he constructs is tested before being sent to a purchaser. Sinclair further testified that his examination of the trigger mechanism following the accident revealed that the trigger mechanism could have been tampered with or the rifle abused. Finally, the allegedly defective trigger was never produced at trial because plaintiff claimed it was lost prior to the time defendant's experts could examine it.
The majority seeks to avoid the effect of the manifest error rule by saying that the rifle was unreasonably dangerous per se and that this was the only proper legal conclusion that the jury could reach, viewing the evidence as a whole. The majority correctly quotes the Halphen test. A product is unreasonably dangerous per se if a reasonable person would conclude that the danger-in-fact of the product outweighs the utility of the product. The Halphen test's application to a particular set of circumstances presents a question of fact. A jury's answer to a question of fact based upon proper legal instructions is not to be disturbed upon review unless it is clearly wrong.
In the case sub judice, the factfinder's choice between two permissible views of the evidence was not manifestly erroneous or clearly wrong, and its conclusions of fact reasonably supported by the evidence. For this reason, it is the majority and not the jury who committed manifest legal error.

*822 GUNPOWDER MANUFACTURER
The required outcome in favor of gun manufacturer Sinclair, supra, should dispose of plaintiff's claim against gunpowder manufacturer Hodgson, as the viability of plaintiff's claim against Hodgson is predicated upon a finding of liability on the part of Sinclair.[1]
Moreover, even if the rifle manufacturer is somehow culpable, the jury was not clearly wrong in finding the gunpowder manufactured by Hodgson to be neither defective nor abnormally dangerous. A product cannot be said to be unreasonably dangerous where the alleged danger of the product is commonly known to be its essential characteristic. Addison v. Williams, 546 So.2d 220 (La.App. 2 Cir.), writ denied, 550 So.2d 634 (La.1989). It is common knowledge, particularly to those experienced in its use, that gunpowder is highly flammable; in fact, that is its well known primary characteristic. Therefore, the jury had a reasonable basis in its finding that the gunpowder did not contain an abnormality making it more dangerous than its original design.
The jury's conclusion that the gunpowder did not explode, a question at the heart of the "abnormally dangerous" issue, was not clearly wrong. Defendants claim the powder did not explode but burned. Plaintiff's expert, Mr. Greene, was the only one to testify at trial indicating the gunpowder was defective, and he admitted: first, that he had no understanding of the chemical composition of this powder; second, that he could not testify to what, if anything, was precisely defective about the gunpowder; and third, that a true detonation would have killed plaintiff. On the other hand, defendants' expert, William Davis, a registered professional engineer specializing in firearms and ammunition, supported Hodgson's position that the H 4895 gunpowder was not explosive but only flammable, concurring with plaintiff expert Greene's opinion that had Hines been involved in a detonation of just one pound of gunpowder, he would not have survived. (Even plaintiff testified that he never heard an explosion.)
As to the exclusion of evidence on the failure to warn theory, the purported breach found by the majority which enabled it to substitute its judgment for that of the jury, the trial court did not abuse its wide discretion in excluding this evidence. According to the trial record, plaintiffs filed a motion in limine requesting that they be allowed to introduce post-accident changes in the wording of the warnings on the gunpowder cans; defendants opposed this motion. Whether evidence is relevant or not is within the discretion of the trial court and its ruling will not be disturbed absent a clear abuse of discretion. Citizen's Bank and Trust v. Consolidated Terminal Warehouse, Inc., 460 So.2d 663 (La.App. 1 Cir.1984).
The trial court did not clearly err when it denied plaintiff's motion on grounds of relevance (La.C.E. art. 401), finding that such warnings were irrelevant since plaintiff, a sophisticated user of firearms,[2] testified he was aware of the dangers involved with this product. A manufacturer has no duty to warn where the danger and manner of avoiding the danger is common knowledge or is known by the injured party. See Whitacre v. Halo Optical Products, Inc., 501 So.2d 994 (La.App. 2 Cir.1987).

DECREE
Finally, the majority legally errs in its award of damages even assuming its apportionment of fault may be substituted for those of the fact finder. The majority concludes that plaintiff is thirty-four percent responsible for his injuries and that each of the defendants is thirty-three percent responsible, then decrees a thirty-four percent reduction in damages. In other words, the majority contends that plaintiff is entitled to recover 66% of his damages, regardless of *823 whether the sums are tendered by two solvent solidary obligors or forced from one solvent defendant should the other be insolvent (as would appear to be the case here).
The law applicable to this 1984 accident precludes imposition of solidary liability upon a defendant determined to be less culpable than the plaintiff seeking redress:
"Art. 2324. Liability for assisting or encouraging wrongful act.
"Art. 2324. He who causes another person to do an unlawful act, or assists or encourages in the commission of it, is answerable, in solido, with that person, for the damage caused by such act.
"Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution."

CONCLUSION
My review of the facts and law leads me to conclude that the majority errs thrice: first, by substituting its factual conclusions for those of a fact-finder who is not complained to have been ill-informed as to the law; second, in finding prescription as to a defendant has been interrupted as a consequence of this erroneous conclusion; third, by failing to properly credit a defendant expressly found by the majority to be less culpable than the plaintiff, in direct contravention of LSA-CC art. 2324 as it has consistently provided since August 1, 1980.[3] Accordingly, I respectfully dissent.

ON REHEARING
We granted rehearing in this matter on application of both the plaintiffs-appellants and defendants-appellees, Hodgdon Powder Company and Admiral Insurance Company, on the limited issues of the solidary liability of defendants-appellees with Sinclair, Inc., the manufacturer, for the award of damages and the award of property damages in the amount of $135,678.47.
The imposition of solidary liability on Sinclair Inc., Hodgdon Powder Company, and Admiral Insurance Company is incorrect as it pertains to the allocation of damages. Article 2324(B) of the Louisiana Civil Code provided at the time of the occurrence (and still does) that:
"... when the amount of recovery has been reduced in accordance with the preceding Article, a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of fault has been attributed... [T]he liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person ... regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise."
Since Hines's fault exceeds that of the defendants, the defendants are not solidarily liable for the payment of damages.
In our first consideration of this matter, we awarded the Hineses $135,678.47 in property damage. This figure represents the exact amount paid by their homeowner insurer, State Farm. In making the award, we recognized the subrogation agreement between insurer and insured. We have granted rehearing on this issue and found our previous ruling incorrect.
The record contains an assignment and subrogation agreement between the Hineses and State Farm for the right to recover for the property damage. State Farm received the right after it paid the claim filed by the Hineses. Both were parties *824 to the suit and asserted their claims. After adverse judgment at trial, the Hineses appealed but State Farm did not.
Hodgdon asserts that State Farm has lost its right to recover under the assignment because it failed to appeal. Furthermore, it contends the Hineses cannot recover for the property damage because they have no right to assert, having lost it in the assignment and having, in fact, already recovered their property damages.
The Hineses claim they should be allowed to collect the property damages in order to avoid imposing a hardship upon State Farm. Essentially, they contend that allowing them to receive the damages will give State Farm the opportunity to recover the amount it paid out. In support of this contention, they cite Fontenot v. Hanover Insurance Company, 465 So.2d 743 (La.App. 3d Cir.1984).
In Fontenot, an insured assigned his rights to his insurer after collecting on a filed claim. Thereafter, the insured filed a personal injury suit against defendants. The insurer was not made a party to the suit. Defendants filed an exception of no right of action claiming plaintiff-insured had assigned away his right to recover. The trial court denied the exception but on appeal this court reversed. However, after finding the assignment validly transferred the plaintiff-insured's interest to the insurer, we remanded to add the insured as plaintiff so that it might have the opportunity to recover under its assignment.
Fontenot does shed light on this issue but the illumination is not favorable to the Hineses. As in Fontenot, the Hineses assigned their right to recover property damages to State Farm. The distinction between Fontenot and the present case is that, unlike Fontenot, the insurer, State Farm, asserted its right and had its claim tried with those of the Hineses. Though State Farm lost in trial, it still had a remedy on appeal. Having failed to appeal, the judgment of the trial court as to it is final. Moreover, the Hineses did not have any right to recover the property damages after the assignment. Consequently, we hold our previous judgment awarding property damages in the amount of $135,678.47 in favor of the Hineses is in error and shall be amended accordingly.
For the foregoing reasons, our decree is amended to read as follows:

DECREE
For the reasons assigned, the judgment of the trial court is reversed and set aside. The following percentages of fault are set: Sinclair, Inc., thirty three percent; Hodgdon Powder Company, thirty three percent; and, Earl Hines, Jr., thirty four percent. Accordingly:
IT IS ORDERED that there be judgment in favor of plaintiff, Earl Hines, Jr., and against defendants, in the sum of $2,322,450.45, and for Beverly Hines and against defendants for the sum of $50,000.00 in the following fashion:
Sinclair, Inc., is liable for thirty three percent of $2,322,450.45 and thirty three percent of $50,000.00 plus legal interest form the date of judicial demand against Sinclair until the date of this decree;
Hodgdon Powder Company is liable for thirty three percent of $2,322,450.45 and thirty three percent of $50,000.00 plus legal interest from the date of judicial demand against Sinclair until the date of this decree. Its insurer, Admiral Insurance Company, is liable for the limits of its $500,000.00 policy, plus legal interest form the date of judicial demand against Sinclair until the date of this decree;
Admiral Insurance Company is liable for legal interest on the entire amount of the judgment from the date of this decree until it tenders or pays its policy limits of $500,000.00;
Sinclair, Inc. is liable for attorney's fees amounting to twenty-five percent of the total award; and
Sinclair, Inc., Hodgdon Powder Company and Admiral Insurance Company are liable for all costs of this appeal.
IT IS FURTHER ORDERED that the total amount awarded to Earl Hines, Jr. and Beverly Hines be reduced according to Earl Hines's comparative fault of thirty four percent.
In all other respects, the petitions for rehearing of defendants-appellees, Hodgdon *825 Powder Company and Admiral Insurance Company, and of the plaintiffs, Earl H. Hines, Jr. and Beverly Helms Hines, are denied.
ORIGINAL DECREE AMENDED AND, AS AMENDED, AFFIRMED.
CULPEPPER and LABORDE, JJ., dissent, being of the opinion that neither Sinclair nor Hodgdon is liable.
NOTES
[*] Honorable William A. Culpepper, retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Evidence of subsequent remedial measures is admissible to prove knowledge, feasibility of precautionary measures, etc. under Toups v. Sears, Roebuck and Company, Inc., 507 So.2d 809 (La. 1987), and LSA-C.E. art. 407.
[1] Suit was filed within prescriptive bounds against Sinclair, but the suit against Hodgson was not. Accordingly, viability of plaintiff's latter claims turns on a finding of conjunctive solidary liability on the part of Sinclair. Absent such a finding, plaintiff's claim against Hodgson must fail on prescription grounds.
[2] Plaintiff also had in his loading room editions of the Sierra Loading Manual, Hornaday Loading Manual, Lyman Loading Manual, Speer Loading Manual, Nosler Loading Manual, as well as two Shooters Bibles.
[3] The effective date of Acts 1979, No. 431, paragraph 1, promulgating Civil Code articles 2323 and 2324, the rules of comparative negligence with which we are concerned. (It is to be noted that the current versions of the referenced articles would call for the same outcome as the one found wanting by this dissent.)